211 N.J. Super. 355 (1986)
511 A.2d 1216
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
AVA MCALLISTER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 26, 1986.
Decided June 25, 1986.
*357 Before BRODY, GAYNOR and BAIME, JJ.
*358 Thomas S. Smith, Jr., Acting Public Defender, attorney for appellant (Lowell Espey, Designated Counsel, of counsel and on the brief and supplemental letter brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (James D. Harris, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
Defendant, a victim of chronic paranoid schizophrenia, was convicted of six crimes arising out of an episode during which she violently resisted arrest. The trial judge imposed concurrent prison terms aggregating seven years and, because of her illness, transferred her from the Trenton Psychiatric Hospital, where he had confined her in lieu of bail, to the custody of the Commissioner of Human Services to be confined in a public mental institution pursuant to N.J.S.A. 30:4-82.
She contends that her attorney provided ineffective legal assistance by failing to raise the defenses of insanity and diminished capacity, and that the trial judge erred in finding her competent to stand trial. She further contends that the judge committed plain errors in his jury charge and in the manner in which he merged offenses. We reverse and remand for a new trial for a reason not raised in the parties' briefs: the judge committed plain error by not having the jury determine whether defendant was guilty of any offense. Instead, he submitted a list of special interrogatories to the jury and from their answers he molded verdicts of guilty and not guilty.
The State presented the following evidence. Two months after defendant had been discharged from her fifth confinement at Marlboro Psychiatric Hospital, she appeared at the office of an obstetrician who had treated her during her first pregnancy. Defendant was pregnant and wanted to engage him again. She soon left the doctor's office, however, after being told that he was away and would not return for two weeks. A patient in the waiting room then reported to the *359 doctor's office manager that she had seen defendant take a check that had been on a counter. Police were summoned and they arrived at the building in uniform. The office manager, who had followed defendant out of the building, directed the police to her. They intercepted defendant as she was entering a coffee shop. She was carrying three steak knives in her pocketbook and a double-edged razor blade in her pocket. As the police approached her, defendant brandished one of the knives and threatened the officers. When Officer Daniel Martin knocked the knife from her hand with his nightstick, defendant drew out the razor, inflicted a three-inch cut on his forehead and slashed Officer Patrick Barrett's trouser leg. The officers eventually subdued and arrested her.
The indictment was in fourteen counts that charged (statutory definitions of assault crimes supplied):
1. Second-degree aggravated assault of Daniel Martin.

Attempts to cause serious bodily injury to another, or causes such injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury; [N.J.S.A. 2C:12-1(b)(1)]
2. Third-degree aggravated assault of Daniel Martin.

Attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon; [N.J.S.A. 2C:12-1(b)(2)]
3. Fourth-degree aggravated assault of Daniel Martin.

Recklessly causes bodily injury to another with a deadly weapon; [N.J.S.A. 2C:12-1(b)(3)]
4. Third-degree aggravated assault of Daniel Martin.

Commits a simple assault ... upon (a) Any law enforcement officer acting in the performance of his duties while in uniform ... if the victim suffers bodily injury.... [N.J.S.A. 2C:12-1(b)(5)(a)]
5. Second-degree aggravated assault of Patrick Barrett.

Attempts to cause serious bodily injury to another, or causes such injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury; [N.J.S.A. 2C:12-1(b)(1)]
6. Third-degree aggravated assault of Patrick Barrett.

Attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon; [N.J.S.A. 2C:12-1(b)(2)]
7. Fourth-degree aggravated assault of Patrick Barrett.

*360 Commits a simple assault ... upon (a) Any law enforcement officer acting in the performance of his duties while in uniform ... [if the victim does not suffer bodily injury].... [N.J.S.A. 2C:12-1(b)(5)(a)]
8. Third-degree terroristic threats (N.J.S.A. 2C:12-3).
9. Fourth-degree resisting arrest (N.J.S.A. 2C:29-2).
10. Third-degree possession of weapon (razor blade) with purpose to use it unlawfully against the person of another (N.J.S.A. 2C:39-4(d)).
11. Fourth-degree unlawful possession of weapon (razor blade) (N.J.S.A. 2C:39-5(d)).
12. Third-degree possession of weapon (knife) with purpose to use it unlawfully against the person of another (N.J.S.A. 2C:39-4(d)).
13. Fourth-degree unlawful possession of weapon (knife defendant was brandishing) (N.J.S.A. 2C:39-5(d)).
14. Fourth-degree unlawful possession of weapons (two knives defendant did not remove from her pocketbook) (N.J.S.A. 2C:39-5(d)).
When the State rested, the trial judge found that there was no evidence to support the charge that defendant had caused Officer Barrett any bodily injury. Accordingly he dismissed counts five and six insofar as they charged defendant with having caused Officer Barrett either serious bodily injury or bodily injury. The judge did not dismiss those counts insofar as they charged defendant with attempting to cause Officer Barrett serious bodily injury or bodily injury.[1]
The trial judge submitted the following special interrogatories to the jury (the jury's answers are indicated):
1. Did Ms. McAllister purposely prevent the police from effecting a lawful arrest (i.e., resist arrest) by using or threatening to use physical force or violence against them or any one of them?
Answer: Yes.
2. Did Ms. McAllister attempt to cause serious bodily injury to Officer Martin purposely or knowingly?
Answer: Yes.
3. Did Ms. McAllister attempt to cause serious bodily injury to Officer Barrett purposely or knowingly?
Answer: Yes.

*361 4. Did Ms. McAllister cause serious bodily injury to Officer Martin, purposely and knowingly?
Answer: No.
5. Did Ms. McAllister recklessly cause serious bodily injury to Officer Martin under circumstances manifesting extreme indifference to the value of human life?
Answer: No.
6. Did Ms. McAllister purposely or knowingly attempt to cause bodily injury to Officer Martin with a deadly weapon?
Answer: Yes.
7. Did Ms. McAllister purposely or knowingly cause bodily injury to Officer Martin with a deadly weapon?
Answer: Yes.
8. Did Ms. McAllister recklessly cause bodily injury to Officer Martin with a deadly weapon?
Answer: Yes.
9. Did Ms. McAllister attempt to cause bodily injury to Officer Martin either purposely, knowingly or recklessly?
Answer: Yes.
10. Did Ms. McAllister attempt to cause bodily injury to Officer Barrett either purposely, knowingly or recklessly?
Answer: Yes.
11. Did Ms. McAllister cause bodily injury to Officer Martin either purposely, knowingly or recklessly?
Answer: Yes.
12. Did Ms. McAllister have possession of a weapon, either knife or razor blade with a purpose to use it unlawfully against another on June 3, 1983?
Answer: Yes.
13. Did Ms. McAllister have possession of a weapon, either knife or razor blade, under circumstances not manifestly appropriate for lawful use of the same on June 3, 1983?
Answer: Yes.
The trial judge treated these answers as the equivalent of guilty verdicts on all counts except counts seven and eight. He entered a not guilty verdict on count seven (aggravated assault  simple assault on a police officer where the victim does not suffer bodily injury) based upon his previous dismissal of this count and entered a not guilty verdict on count eight (terroristic threats) because he had inadvertently overlooked it when he composed the special interrogatories.
Before we consider the propriety of using special interrogatories in this case, we first note that the two most serious *362 convictions, second-degree aggravated assaults on Officers Martin and Barrett, rest upon an erroneous jury instruction defining the element of attempt as reflected in interrogatories 2 and 3. By its answers to interrogatories 4 and 5 the jury found that defendant had not caused serious bodily injury to Officer Martin and, as the judge had previously ruled, no evidence supported the charge that defendant had caused any bodily injury to Officer Barrett. Thus the second-degree aggravated assault convictions rest solely on the jury's findings that defendant had attempted to cause Officers Martin and Barrett serious bodily injury.
A person is guilty of N.J.S.A. 2C:12-1(b)(1) second-degree aggravated assault if he "[a]ttempts to cause serious bodily injury to another, or causes such injury purposely or knowingly or ... recklessly." Where a person causes serious bodily injury, he is guilty whether his mental state is purposeful, knowing or reckless. However, where the person does not cause serious bodily injury but only attempts to do so, he is guilty only if the attempt to cause that result is purposeful. N.J.S.A. 2C:5-1(a). State v. Battle, 209 N.J. Super. 255, 258-259 (App. Div. 1986). Also, an attempt is purposeful not only because it is so defined by statute, but because one cannot logically attempt to cause a particular result unless causing that result is one's "conscious object," the distinguishing feature of a purposeful mental state. N.J.S.A. 2C:2-2(b)(1).
In his instructions to the jury on the assault charges and in the special interrogatories, the judge essentially tied to attempt the same choice of culpable mental states that is available when serious bodily injury or bodily injury results.[2] Defendant's convictions for committing aggravated assaults *363 upon the officers rest solely upon the jury's finding that she "purposely or knowingly" attempted to cause them serious bodily injury (interrogatories 2 and 3). Because we cannot tell whether the jury found that the attempt was purposeful or knowing, we must assume that the jury found that the attempt was knowing, a finding that cannot support a second-degree aggravated assault conviction.
Although not prohibited in all cases, "special interrogatories as a tool in criminal trials are not condoned, and their use [is] discouraged." State v. Simon, 79 N.J. 191, 204 (1979). The jury's responsibility in a criminal trial goes beyond finding facts in dispute; even if the elements of an offense have been proved by uncontroverted evidence the judge may not direct a guilty verdict. State v. Collier, 90 N.J. 117, 124 (1982).
We need not recite the vices inherent in the use of special interrogatories in criminal trials. They were fully explored in Simon and are present here in full measure. It is enough to note that special interrogatories tend to dilute the jury's exclusive and "ultimate responsibility for determining guilt or innocence...." Simon, 79 N.J. at 199. In the rare case where there is a compelling need for special interrogatories in a criminal trial they must be related to the jury's overall deliberations and its general verdict. See cases collected in Simon, 79 N.J. at 202. That was not done here where the judge, not the jury, assumed the ultimate responsibility of convicting or acquitting this defendant. As in Simon, that error was plain and the prejudice manifest. Id. at 204-208.
By carefully particularizing criminal conduct so as to produce a sentence that is fitting to the offense, the Code often requires a jury to pass on a multitude of charges. A judge ordinarily should instruct a jury to consider all charges supported by the evidence even though some may carry the same statutory label. A verdict as to each charge is often necessary to enable the judge to make proper mergers at sentencing and to isolate error, thereby frequently rendering it harmless on appeal. *364 State v. Arriagas, 198 N.J. Super. 575, 580-581 (App.Div. 1985), aff'd sub nom. State v. Crisantos, 102 N.J. 265 (1986). However, instructions on a multitude of closely related offenses can confuse a jury. Here, for example, the jury had to be instructed on six different ways that defendant could have committed an aggravated assault of Daniel Martin. The trial judge's concern for jury comprehension understandably led him to resort to the use of special interrogatories. Nevertheless, doing so was a serious error.
Given the unavailability of special interrogatories in criminal trials, the trial judge can usually aid the jurors in remembering the distinctions between offenses having the same or similar statutory labels by using a carefully prepared written verdict sheet that, where necessary, labels offenses by one or more of their distinguishing elements. That kind of verdict sheet is permitted by R. 3:19-1(b) and has the virtue of having the jury return a general verdict as to each offense. When using a written verdict sheet the judge must impress upon the jury that the descriptive labels are just that  labels  and are not to be considered definitions of the offenses. It is advisable for the trial judge to define fully the particular elements of each offense as he reviews the verdict sheet with the jury.
We have appended to this opinion a sample written verdict sheet that might have been used in this case. We note the following respecting its contents. In some instances we rearranged the order of the offenses from the order in which they appear in the indictment. Our purpose was to group related offenses in a manner that will aid the jury. We did not provide a full definition of any offense. Where descriptive words are used they are intended solely as distinguishing labels; the full definition of each offense must be contained in the judge's charge. We accepted the facts that the trial judge had dismissed certain charges because there was no evidence that Officer Barrett received any bodily injury and that he had dismissed count seven.
*365 We recognized that where a subsection of the Code defines an offense as an attempt to cause and also as causing serious bodily injury or bodily injury, the attempt is a separate offense. Even where the jury finds that a defendant caused serious bodily injury, the jury should also return a verdict on attempt in the event that the defendant later, on appeal, successfully challenges the finding that the victim suffered serious bodily injury. Where one offense is a lesser included offense, however, the lesser included offense appears indented and the jury should be instructed not to return a verdict on the lesser offense if it finds the defendant guilty of the greater one. If an appellate tribunal should later conclude that the evidence supports a guilty verdict as to the lesser but not the greater offense, the verdict may be molded accordingly. See, e.g., State v. Williams, 197 N.J. Super. 127, 133 (App.Div. 1984), certif. den. 99 N.J. 233 (1985).
There is ample evidence in this record that defendant's competence to stand trial must be constantly monitored by the trial judge. State v. Spivey, 65 N.J. 21, 37 (1974). In the event of one or more hearings on the issue, the judge on each occasion must make all the findings required by N.J.S.A. 2C:4-4. Finally, justice requires that we permit defendant to give notice that she intends to raise the defenses of insanity and/or diminished capacity. See R. 3:12. Defendant may give such notice within 15 days following remand.
Reversed and remanded for a new trial.

APPENDIX

VERDICT SHEET
(1) Aggravated assault of Daniel Martin: causing serious bodily injury purposely, knowingly or recklessly.
 Not Guilty ____
 Guilty ____
(2) Aggravated assault of Daniel Martin: attempting to cause serious bodily injury.
 Not Guilty ____
 Guilty ____
*366 (3) Aggravated assault of Patrick Barrett: attempting to cause serious bodily injury.
 Not Guilty ____
 Guilty ____
(4) Aggravated assault of Daniel Martin: causing bodily injury purposely or knowingly with a deadly weapon.
 Not Guilty ____
 Guilty ____
(4a) Aggravated assault of Daniel Martin: causing bodily injury recklessly with a deadly weapon.
 Not Guilty ____
 Guilty ____
(5) Aggravated assault of Daniel Martin: attempting to cause bodily injury with a deadly weapon.
 Not Guilty ____
 Guilty ____
(6) Aggravated assault of Patrick Barrett: attempting to cause bodily injury with a deadly weapon.
 Not Guilty ____
 Guilty ____
(7) Aggravated assault of Daniel Martin: simple assault of police officer causing bodily injury.
 Not Guilty ____
 Guilty ____
(8) Terroristic threats.
 Not Guilty ____
 Guilty ____
(9) Resisting arrest.
 Not Guilty ____
 Guilty ____
(10) Possession of weapon with the purpose of using it unlawfully against a person (knife).
 Not Guilty ____
 Guilty ____
(11) Possession of weapon with the purpose of using it unlawfully against a person (razor blade).
 Not Guilty ____
 Guilty ____
*367 (12) Unlawful possession of weapon (knife).
 Not Guilty ____
 Guilty ____
(13) Unlawful possession of weapon (razor blade).
 Not Guilty ____
 Guilty ____
(14) Unlawful possession of weapon (two knives).
 Not Guilty ____
 Guilty ____
NOTES
[1] The trial judge mistakenly stated that he was dismissing count seven that charged assault on a uniformed police officer who suffers no bodily injury. The judge and the parties thereafter treated count seven as having been properly dismissed.
[2] Interrogatories 2 and 3 respecting attempt to cause serious bodily injury describe the attempt as "purposely or knowingly." Interrogatories 9 and 10 respecting attempt to cause bodily injury describe the attempt as "purposely, knowingly or recklessly."