707 A.2d 455

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. FRANKLIN CAMACHO, DEFENDANT–
RESPONDENT.

Argued November 3, 1997—Decided March 25, 1998.

*Linda A. Shashoua,* Special Deputy Attorney General, Acting Assistant Prosecutor, argued the cause for appellant (*Lee A. Solomon,* Acting Attorney General, Acting Camden County Prosecutor, attorney).

*Timothy P. Reilly,* argued the cause for respondent.

*Nancy Peremes Barton,* Deputy Attorney General, argued the cause for amicus curiae, Attorney General of New Jersey (*Peter Verniero,* Attorney General, attorney).

The opinion of the Court was delivered by

STEIN, J.

Pursuant to *N.J.S.A.* 2C:39–4a, possession of "any firearm with a purpose to use it unlawfully against the person or property of another" is a second degree offense. The Graves Act, see *N.J.S.A.* 2C:43–6c, provides that a person who has been convicted under *N.J.S.A.* 2C:39–4a of possession of a firearm with intent to use it against the *person* of another shall be sentenced to a minimum parole ineligibility term of between one-third and one-half of the sentence imposed by the court or three years, whichever is greater. Defendant Franklin Camacho pleaded guilty to possession of a firearm with the intent to use it unlawfully, in violation of *N.J.S.A.* 2C:39–4a.

After conducting a Graves Act hearing, the trial court determined that defendant had possessed a firearm with the purpose to use it against the person of another, and imposed a Graves Act sentence on that count of seven years with three years of parole ineligibility. On appeal from the denial of defendant's post-conviction relief application, the Appellate Division reversed, holding that the question whether defendant possessed the firearm with the purpose of using it against the person of another was a jury issue, remanding the matter for trial. *State v. Camacho,* 295 *N.J.Super.* 585, 594, 685 *A.*2d 961 (1996).

We must determine whether intent to use a firearm unlawfully against the person, as opposed to the property, of another is an

element of *N.J.S.A.* 2C:39–4a, thus entitling defendant to a jury trial on that issue, or whether the distinction between intent to use a firearm against a person, rather than property, is an issue to be determined by the sentencing court at a Graves Act hearing.

I

On November 16, 1991, defendant went to a party at the apartment of Alice Ramirez in Camden, New Jersey. Several people were at Ms. Ramirez's apartment, including defendant's cousin, Ramon Rodriguez, who is the father of Ms. Ramirez's children. Defendant turned on the stereo. When Ms. Ramirez turned off the stereo, defendant became angry, pulled out a handgun that he had on his person, and shot at the stereo and the walls.

In September 1992, defendant was indicted by a Camden County Grand Jury on the following charges: second degree aggravated assault against Alice Ramirez, in violation of *N.J.S.A.* 2C:12–1b(1) (Count One); second degree aggravated assault against Ramon Rodriguez, in violation of *N.J.S.A.* 2C:12–1b(1) (Count Two); third degree aggravated assault against Alice Ramirez, in violation of *N.J.S.A.* 2C:12–1b(2) (Count Three); third degree aggravated assault against Ramon Rodriguez, in violation of *N.J.S.A.* 2C:12–1b(2) (Count Four); fourth degree aggravated assault against Alice Ramirez, in violation of *N.J.S.A.* 2C:12–1b(4) (Count Five); fourth degree aggravated assault against Ramon Rodriguez, in violation of *N.J.S.A.* 2C:12–1b(4) (Count Six); second degree possession of a firearm for an unlawful purpose with intent to use it against the person of another, in violation of *N.J.S.A.* 2C:39–4a (Count Seven); and third degree unlawful possession of a handgun, in violation of *N.J.S.A.* 2C:39–5b (Count Eight).

Prior to trial, the State made a motion to amend Count Seven to state that defendant was charged with second degree possession of a firearm with an intent to use it unlawfully against the person *or property* of another. Defense counsel responded that she would

not object to the motion but, if the case went to trial, she requested that a special interrogatory be submitted to the jury concerning whether defendant intended to use the firearm either against the person *or* against the property of another.

In September 1993, defense counsel and the prosecutor informed the trial court that they had reached an agreement whereby defendant would plead guilty to fourth degree aggravated assault against Ramon Rodriguez (Count Six) and second degree possession of a firearm for an unlawful purpose with intent to use it against the person of another (Count Seven). All other counts would be dismissed, and the State would recommend a seven-year term of imprisonment. The court would hold a hearing to determine the applicability of the Graves Act and, if it determined that the Graves Act did apply, the State would recommend that the court impose a Graves Act parole ineligibility period of three years.

The next day defendant appeared before the trial court to plead guilty pursuant to the plea agreement. Before defendant entered his plea, the trial court ruled on the State's motion to amend Count Seven and on whether defense counsel's requested interrogatory should be submitted to the jury if the case went to trial. The trial court held that the issue whether defendant possessed the firearm with the intent to use it unlawfully against the person, rather than the property, of another was not a question for the jury, and therefore the jury would not receive an interrogatory concerning that distinction. Rather, the court would make that determination at a Graves Act hearing, pursuant to *N.J.S.A.* 2C:43-6d. On the State's motion, and with the consent of defense counsel, the court amended Count Seven to charge defendant with second degree possession of a firearm with intent to use it against the person or the property of another.

As a factual basis for his plea, defendant stated that he had gone to Ms. Ramirez's apartment and turned on the stereo. When Ms. Ramirez turned off the stereo defendant became angry. He took out the gun that he carried for "self defense" and shot the

stereo and the wall. Defendant stated that Mr. Rodriguez was standing next to him when he shot the stereo. Defendant admitted that he knew there were people in the room on the other side of the wall at which he shot, but stated that he did not shoot at the wall because the people were on the other side of it. The court accepted defendant's guilty plea to Counts Six and Seven.

On January 14, 1994, the court held a Graves Act hearing prior to sentencing defendant. At the beginning of the hearing the court asked defense counsel whether defendant "consented to a hearing to let [the court] decide the issue as to whether this is a Graves Act offense or not." Defense counsel said that he did. The court then asked, "And, he's willing to give up the right to a trial by jury on that issue; is that right?" Defense counsel answered, "Right." The court then asked defendant if that was correct. Defendant answered, "Yes."

The State presented the Grand Jury testimony of Ms. Ramirez and Mr. Rodriguez, and introduced photographs of the crime scene that showed bullet holes in the walls and ceiling of Ms. Ramirez's apartment. In addition, pictures showed that a bullet had passed through the wall behind the stereo and entered a room where defendant had conceded that he knew people had been.

After the State presented its case, defense counsel informed the court that defendant wanted to give a statement to express "his remorse," and that defense counsel did not wish to ask him questions. The prosecutor stated that if defendant's statement would be relevant to the applicability of the Graves Act, the prosecutor reserved the right to cross-examine defendant. The court determined that defendant should be under oath, and defendant was duly sworn. Defense counsel decided to interrogate defendant, in response to which defendant stated that he never intended to use the gun against anyone at the apartment. Contrary to his statements when he entered his guilty plea, defendant said that he did not know there were people on the other side of the wall at which he shot. On cross-examination, defendant

admitted that when he shot the stereo, people were sitting on the sofa not far from him.

The court noted that Mr. Rodriguez stated that, before defendant shot the stereo, he had threatened Ms. Ramirez, saying, "Alice, I'll blast you Alice, I'll blast you, don't (deleted) with me, I'll blast you." The court observed that Ms. Ramirez stated that defendant had "aimed the gun at everybody that was sitting in the living room," threatened to kill them, and that one of defendant's shots was toward her. In light of those statements and defendant's testimony in support of his guilty plea, the court found that defendant's testimony at the Graves Act hearing was not credible. The court held that the Graves Act applied to Count Seven because defendant's purpose in using the firearm was to "frighten and terrorize the people" at the Ramirez apartment. That constituted a purpose to use a firearm against the person of another pursuant to *N.J.S.A.* 2C:43-4a. The court sentenced defendant on Count Six to eighteen months without parole. On Count Seven, the court imposed a concurrent sentence of seven years, with three years to be served without parole.

Although defendant requested that an appeal be filed, defense counsel did not file the appeal. In February 1995, defendant filed a motion for post-conviction relief (PCR), alleging that he had received ineffective assistance of counsel because his lawyer advised him that he did not have a right to have a jury determine whether he intended to use the firearm against the person, as opposed to the property, of another. The court denied defendant's PCR motion on two grounds: the argument should have been made on direct appeal, and the applicability of the Graves Act is a sentencing issue rather than an element of the offense. The court held that the elements of the offense of possession of a firearm for an unlawful purpose are met if the jury finds that a defendant possessed a firearm with the purpose to use it unlawfully against the person *or* the property of another.

On appeal, defendant argued that he was denied his constitutional right to a fair trial by the trial court's decision that he did

not have the right to a jury determination on the issue whether the firearm was possessed with the intent to use it unlawfully against the person of another. The Appellate Division held that whether defendant possessed a firearm with an intent to use it unlawfully against the person, as opposed to the property, of another, was a question for the jury to decide. *Camacho, supra,* 295 *N.J.Super.* at 590–91, 685 *A.*2d 961. Additionally, the court held that a jury's determination that a defendant possessed a firearm with the intent to use it unlawfully against the person of another would obviate the need for a hearing under the Graves Act. *Id.* at 592, 685 *A.*2d 961. The court reversed and remanded the case to permit defendant to vacate his plea and proceed to trial. *Id.* at 594, 685 *A.*2d 961.

This Court granted the State's petition for certification. *State v. Camacho,* 149 *N.J.* 36, 692 *A.*2d 49 (1997).

## II

The Graves Act provides that one who uses or possesses a firearm during the commission, attempt, or flight from certain serious offenses, or one who is convicted under *N.J.S.A.* 2C:39–4a of possession of a firearm with the intent to use it against the person of another, shall receive a mandatory prison sentence that includes at least three years of parole ineligibility. *State v. Des Marets,* 92 *N.J.* 62, 64, 455 *A.*2d 1074 (1983). The relevant section of the Graves Act is *N.J.S.A.* 2C:43–6c, which provides in part:

A person who has been convicted under 2C:39–4a. of possession of a firearm with *intent to use it against the person of another,* or of a crime under any of the following sections: 2C:11–3, 2C:11–4, 2C:12–1b., 2C:13–1, 2C:14–2a., 2C:14–3a., 2C:15–1, 2C:18–2, 2C:29–5, who, while in the course of committing or attempting to commit the crime, including the immediate flight therefrom, used or was in possession of a firearm as defined in 2C:39–1f., shall be sentenced to a term of imprisonment by the court. The term of imprisonment shall include the imposition of a minimum term. The minimum term shall be fixed at, or between, one-third and one-half of the sentence imposed by the court or three years, whichever is greater, or 18 months in the case of a fourth degree crime, during which the defendant shall be ineligible for parole.

(Emphasis added.)

In *Des Marets, supra,* Chief Justice Wilentz observed that the intent underlying the Graves Act was "to ensure incarceration for those who arm themselves before going forth to commit crimes. The Act is a direct response to a substantial increase in violent crime in New Jersey.... The intended deterrence can be served only by giving effect to the obviously broad coverage of this law." 92 *N.J.* at 68, 455 *A.*2d 1074 (footnote omitted). "Implicit in the policies underlying the Graves Act is a recognition that the use of firearms in the commission of a crime poses a grave threat to public safety." *State v. Towey,* 114 *N.J.* 69, 83, 552 *A.*2d 994 (1989).

Originally, the Graves Act provided that a person convicted under 2C:39–4a ("Any person who has in his possession any firearm with a purpose to use it unlawfully against the person or property of another is guilty of a crime of the second degree"), would be subject to a minimum term of parole ineligibility without regard to whether it was the defendant's purpose to use the firearm against the person or against the property of another. *L.* 1981, *c.* 31, § 1 (codified as *N.J.S.A.* 2C:43–6c). The Act was amended by *L.* 1982, *c.* 119 (codified as 2C:43–6c) to apply to persons convicted under *N.J.S.A.* 2C:39–4a of possession of a firearm with intent to use it only against the person of another. The amendment was intended to "remove from Graves Act coverage those persons convicted under 2C:39–4a, but having no intent to use the firearm against other persons." Cannel, *N.J. Criminal Code Annotated,* comment 1 on *N.J.S.A.* 2C:43–6c (1997).

## A

Defendant argues that he is entitled to have a jury determine whether he intended to use the firearm against the person, as opposed to the property, of another. He contends that the 1982 amendment to the Graves Act transformed the person/property distinction into an element of *N.J.S.A.* 2C:39–4a, and that a jury must answer a special interrogatory indicating that the State proved that element beyond a reasonable doubt before a defen-

dant may be sentenced pursuant to the Graves Act. Therefore, because the trial court made the determination in this case, defendant contends that he was deprived of his constitutional right to a trial by jury.

The State argues that the person/property distinction is not an element of the substantive offense under *N.J.S.A.* 2C:39–4a; rather, the distinction is relevant only to sentencing and therefore it is the role of the sentencing court, not the jury, to determine whether defendant's purpose was to use the firearm against the person, as opposed to the property, of another.

This Court first discussed the pre-amendment Graves Act in *Des Marets, supra,* 92 *N.J.* 62, 455 *A.*2d 1074. In *Des Marets,* the defendant pled guilty to two counts each of burglary and theft and one count of possession of a handgun without a license. *Id.* at 66–67, 455 *A.*2d 1074. During one of the burglaries, the defendant had stolen two unloaded handguns. *Id.* at 66, 455 *A.*2d 1074. The defendant claimed that he should not be sentenced under the Graves Act because there was no evidence that he intended to use the weapons during the commission of the crime. *Id.* at 68, 455 *A.*2d 1074. We disagreed, holding that a person may be subject to a Graves Act sentence "upon a showing of possession of a firearm, without any need to demonstrate intent to use." *Ibid.* The Act's use of the word "possession," especially "as part of the phrase 'used or was in possession of a firearm' strongly suggests that the actor's state of mind was meant to be irrelevant." *Id.* at 69, 455 *A.*2d 1074. The Court emphasized that the 1982 amendment to the Act strengthened that conclusion, finding that "[t]he *express* inclusion of a requirement of intent to use" the firearm against the person of another in *N.J.S.A.* 2C:39–4a "persuasively suggests its absence" in the case of the other enumerated offenses was deliberate. *Ibid.* (citing *L.* 1982, *c.* 119, § 1).

We expanded our holding in *Des Marets* in *State v. Stewart,* 96 *N.J.* 596, 477 *A.*2d 300 (1984). In *Stewart,* which also involved the pre–1982 Graves Act, the defendant and his companions robbed a pedestrian. *Id.* at 599, 477 *A.*2d 300. The victim testified that

during the robbery the defendant had pointed a flare gun at him. *Ibid.* The defendant conceded that there was a flare gun and two air rifles in the truck that he was using at the time of the robbery, but he denied having pointed them at the victim. *Id.* at 600, 477 A.2d 300. The defendant was convicted of second degree (unarmed) robbery, but was acquitted of first degree (armed) robbery and weapons possession. *Ibid.* On appeal, the defendant claimed that the Graves Act was inapplicable, contending that he was not in possession of a firearm for purposes of the Graves Act because he was not in possession of a firearm during the commission of the offense. *Id.* at 601, 477 A.2d 300. We disagreed, holding that "possession" of a firearm for purposes of the Graves Act "includes not only actual possession but [also] constructive possession that the defendant is able to convert practically immediately to actual possession." *Id.* at 604, 477 A.2d 300.

We also discussed the Graves Act requirement that a hearing be held before a mandatory sentence may be imposed. The trial court had not held a hearing but did submit an interrogatory to the jury asking, if the defendant was guilty of robbery, whether "in the course of committing or attempting to commit the crime including the immediate flight therefrom ... he use[d] or was ... in possession of a firearm." *Id.* at 600, 477 A.2d 300. Because the jury answered in the affirmative, the trial court sentenced the defendant to a three-year parole ineligibility period pursuant to the Graves Act. *Id.* at 600–01, 477 A.2d 300. We held that the trial court failed to follow the procedures set forth in the Graves Act, *N.J.S.A.* 2C:43–6d, which requires that a hearing be held before a Graves Act sentence may be imposed. *Id.* at 605, 477 A.2d 300. We observed that *N.J.S.A.* 2C:43–6d provides:

The court shall not impose a mandatory sentence pursuant to subsection c. of this section ... unless the ground therefor has been *established at a hearing.* At the hearing, which may occur at the time of sentencing, the prosecutor shall establish by a preponderance of the evidence that the weapon used or possessed was a firearm. In making its finding, the court shall take judicial notice of any evidence, testimony or information adduced at the trial, plea hearing, or other court proceedings and shall also consider the presentence report and any other relevant information.

[*Ibid.*]

Although the defendant contended that that section allowed the sentencing court to determine only whether the weapon at issue was a firearm, the Court "interpret[ed] this section as requiring the sentencing court to determine whether defendant used or possessed a weapon as well as whether that weapon is a firearm." *Id.* at 605–06, 477 *A.*2d 300.

Although the jury had acquitted the defendant of the weapons charges, the Court found that it was not unfair for the sentencing court to decide whether he had possessed a weapon during the crime. *Id.* at 605, 477 *A.*2d 300. The Court observed that the Legislature had included in the list of offenses to which the Graves Act applied "some crimes for which possession or use of a firearm is not always a necessary element to be proved." *Ibid.* Also, because the trial court is required to make an independent determination concerning whether the Graves Act applies at a hearing at which evidence not produced at trial may be admitted, the fact "[t]hat the jury's findings may have been insufficient to establish grounds for applying the Graves Act does not limit the court." *Id.* at 607, 477 *A.*2d 300. Finally, we determined that "[t]he jury's verdicts of acquittal are not irreconcilable with the finding of possession under the Graves Act." *Ibid.* The Court noted that the jury, in acquitting the defendant, could have found that he possessed a weapon but lacked the mental state required to find him guilty of the possession and armed robbery charges. *Id.* at 607 n. 7, 477 *A.*2d 300.

Four months after our decision in *Stewart* the Appellate Division decided *State v. Latimore,* 197 *N.J.Super.* 197, 484 *A.*2d 702 (App.Div.1984), *certif. denied,* 101 *N.J.* 328, 501 *A.*2d 978 (1985). In *Latimore,* the defendants had left a sawed-off shotgun and two handguns in a hedge after being asked by police officers to leave the area. *Id.* at 208–09, 484 *A.*2d 702. The defendants were convicted of multiple offenses, including possession of weapons with a purpose to use them unlawfully in violation of *N.J.S.A.* 2C:39–4a. On appeal, defendant Payne challenged his sentence,

including his extended term and the Graves Act parole ineligibility term imposed on the basis of his conviction under *N.J.S.A.* 2C:39–4a. Although *Latimore* involved offenses and sentencing that occurred before the 1982 amendment to the Graves Act, the Appellate Division held that because *N.J.S.A.* 2C:43–6.1 allows persons sentenced pursuant to the Graves Act for violating *N.J.S.A.* 2C:39–4a to have their sentences reviewed in light of the 1982 amendment, "retroactive application of the amendment ... seems appropriate." *Id.* at 222, 484 *A.*2d 702.

The Appellate Division determined that the defendant could not be sentenced under the Graves Act because

the evidence presented in support of [the charges of possession of a firearm for an unlawful purpose] does not indicate the presence of any persons in the area at the time that defendants possessed the guns, so there was no proof of an intent to use those guns unlawfully against the "person" of another, except by the inference that some person may appear during the course of a criminal act.

[*Id.* at 221, 223, 484 *A.*2d 702.]

The court observed in dicta that in cases applying the 1982 amendment to the Graves Act the jury, not the court, would determine whether the defendant intended to use a firearm against the person, rather than the property, of another:

[I]t now appears that to [apply a Graves Act period of parole ineligibility] it will be necessary to obtain, by special interrogatory, a finding by the jury as to whether or not a conviction under *N.J.S.A.* 2C:39–4a is for possession of a firearm with intent to use it unlawfully against either the person or the property of another, or both.

[*Ibid.*]

In noting that a special interrogatory was required due to the 1982 amendment, the Appellate Division mentioned neither *Stewart, supra,* 96 *N.J.* 596, 477 *A.*2d 300, nor *Stewart*'s holding that the determination concerning whether the Graves Act applies to a specific defendant should be made by the court rather than a jury. However, apparently in response to *Latimore,* the Model Criminal Jury Charge for violation of *N.J.S.A.* 2C:39–4a was amended to require that juries be instructed to determine, as an element of the offense, whether the defendant "possessed the firearm with the purpose to use it against another person (or the property of another)," and observed that "[i]f the evidence indicates that both

are in question, the jury should be asked to answer a special verdict as to whether it finds the possession was against the person, the property or both." *Model Jury Charges (Criminal)*, § 2C:39–4a Possession of a Firearm With a Purpose to Use it Unlawfully Against the Person or Property of Another (June 19, 1995).

Consistent with his position that the person/property distinction is an element of the substantive offense of *N.J.S.A.* 2C:39–4a, defendant contends that the Graves Act does not authorize the sentencing court to consider defendant's subjective intent in committing the crime or in possessing the firearm because that is an issue for the jury to determine. However, we have expressly allowed trial courts to determine whether defendants exhibited the necessary state of mind to cause them to be subject to the Graves Act. *State v. White*, 98 *N.J.* 122, 484 *A.2d* 691 (1984).

In *White*, the defendant was convicted of first degree armed robbery and possession of a weapon for an unlawful purpose. *Id.* at 127, 484 *A.2d* 691. The defendant claimed that because he was merely an accomplice to the armed robbery and did not possess a firearm himself, he should not have been subject to the Graves Act. *Id.* at 126, 484 *A.2d* 691. We held, however, that "if an accomplice is found guilty of an armed Graves Act offense that was committed with a firearm," he is subject to the Graves Act. *Ibid.* Additionally, we stated:

If an accomplice is convicted only of an unarmed offense, but the *trial court* finds that the defendant nonetheless *knew or had reason to know* that his cohort would use or be in possession of a firearm in the course of committing or attempting to commit the crime, including the immediate flight therefrom, the accomplice is likewise subject to Graves Act penalties.

[*Ibid.* (emphasis added).]

We observed that "[a]n accomplice may be guilty of armed robbery even though he did not personally possess or use the firearm in the course of the commission of the robbery," as long as "the accomplice had the purpose to promote or facilitate that crime, namely, robbery with the use of a firearm." *Id.* at 130, 484 *A.2d* 691. We concluded that the Legislature intended that an

accomplice found guilty of first degree robbery because the other perpetrator used or possessed a firearm in the course of the robbery would be sentenced pursuant to the Graves Act. *Ibid.* See *State v. Weeks*, 107 *N.J.* 396, 405, 526 *A.*2d 1077 (1987) (reaffirming that for accomplice to be subject to Graves Act sentence, he must be accomplice to Graves Act offense and have shared purpose to commit offense with firearm). Thus, in appropriate cases this Court has required the trial court to evaluate a defendant's state of mind to determine whether the Graves Act applied after the defendant has been convicted of an enumerated offense by the jury. *See State v. Wooters*, 228 *N.J.Super.* 171, 178, 549 *A.*2d 441 (App.Div.1988) (holding defendant subject to Graves Act if he had mental state necessary to be convicted of armed offense as accomplice).

Additionally, the Legislature provided that any defendant who, at the time of the 1982 amendment, was serving a Graves Act period of parole ineligibility solely as a result of his conviction under *N.J.S.A.* 2C:39–4a for the possession of a firearm with the intent to use it against the *property* of another could "have his sentence reviewed by the sentencing court. For good cause shown, the court may impose any sentence which would have otherwise been available for such person." *N.J.S.A.* 2C:43–6.1. Thus, with respect to defendants seeking review of their pre–1982 amendment sentences, the Legislature intended for the person/property distinction to be made by the sentencing court, not a jury.

 We have outlined the elements of *N.J.S.A.* 2C:39–4a in previous opinions. In order to obtain a conviction under *N.J.S.A.* 2C:39–4a, the State must prove beyond a reasonable doubt that: (1) the item possessed was a firearm within the meaning of *N.J.S.A.* 2C:39–1f; (2) the defendant possessed the firearm, which under *N.J.S.A.* 2C:2–1c requires knowledge or awareness of his control over the item; (3) the defendant's purpose or conscious objective was to use it *against the person or property* of another; and (4) the defendant intended to use it in a manner that was

proscribed by law. *State v. Diaz*, 144 *N.J.* 628, 635, 677 *A.*2d 1120 (1996); *State v. Harmon*, 104 *N.J.* 189, 212, 516 *A.*2d 1047 (1986). Thus, in resolving guilt or innocence of defendants prosecuted under *N.J.S.A.* 2C:39–4a, a jury need not distinguish between whether a defendant intended to use a firearm against the person, as opposed to the property, of another.

As defined in the Criminal Code, "element of an offense" means:
(1) such conduct or (2) such attendant circumstances or (3) such a result of conduct as

(a) Is included in the description of the forbidden conduct in the definition of the offense;

(b) Establishes the required kind of culpability;

(c) Negatives an excuse or justification for such conduct;

(d) Negatives a defense under the statute of limitations; or

(e) Establishes jurisdiction or venue....

[*N.J.S.A.* 2C:1–14h.]

As indicated above, the distinction between whether defendant intended to use a firearm against the person, as opposed to the property, of another, is not "included in the description of the forbidden conduct in the definition of the offense." The substantive offense requires only that the defendant's purpose or conscious objective was to use a firearm against the person or property of another. A jury need not indicate whether it found that a defendant's purpose was to use a firearm *either* against a person, *or* against property, *or* both. Rather, the distinction is made in the Graves Act only, which suggests that the distinction is relevant for sentencing purposes, not for obtaining a conviction. *See also State v. Lopez*, 276 *N.J.Super.* 296, 307, 647 *A.*2d 1351 (App.Div.) (holding that because type of deadly weapon is not element of robbery and is relevant only to Graves Act applicability, type of deadly weapon need not be specified in indictment and is irrelevant to jury deliberations), *certif. denied*, 139 *N.J.* 289, 654 *A.*2d 469 (1994).

Neither *State v. Petties*, 139 *N.J.* 310, 654 *A.*2d 979 (1995), nor *State v. Diaz, supra*, 144 *N.J.* 628, 677 *A.*2d 1120, is at all inconsistent with this analysis. In *Petties, supra*, we held that for

the purpose of resolving issues of merger of weapons offenses with other substantive charges, a trial court may use a special verdict to obtain a jury determination whether the weapons possession was solely for the purpose of using the weapon against the victim of the substantive offense, or for a broader purpose. 139 *N.J.* at 320–21, 654 *A.*2d 979. In *Diaz, supra,* we explained that our holding in *Petties* did not mandate the use of special verdicts in all cases in which a defendant is charged both with possession of a weapon for an unlawful purpose as well as another substantive offense, noting that mandatory use of special verdicts would unnecessarily restrict a sentencing court's discretion on merger issues. 144 *N.J.* at 642–43, 677 *A.*2d 1120. Neither *Petties* nor *Diaz* specifically addressed the use of special verdicts for Graves Act purposes.

## B

Although the Graves Act specifically states that "[t]he court shall not impose a mandatory sentence [under the Act] unless the ground therefor has been established at a hearing," *N.J.S.A.* 2C:43–6d, the Appellate Division opinion concluded that if a defendant is convicted of possession of a firearm with intent to use it against the person of another, no Graves Act hearing is necessary in order to trigger the mandatory provision of the Act. *Camacho, supra,* 295 *N.J.Super.* at 592, 685 *A.*2d 961. "It follows, however, that if defendant is convicted only of possession with intent to use the firearm against the property of another, the Graves Act does not apply at all and there is no need for a Graves Act hearing." *Ibid.* The Appellate Division reached that conclusion because it agreed with defendant that the person/property distinction is an element of the offense of possession of a firearm with the purpose of using it unlawfully under *N.J.S.A.* 2C:39–4a.

In *Stewart, supra,* this Court held that the trial court could not submit an interrogatory to the jury to determine a defendant's Graves Act eligibility, but rather must determine that eligibility after a hearing in accordance with *N.J.S.A.* 2C:43–6d. 96 *N.J.* at

605, 477 *A*.2d 300. Because *N.J.S.A.* 2C:43–6d does not provide for any exceptions to the hearing requirement, a literal reading of that section suggests that before a defendant may be sentenced pursuant to the Graves Act the court must conduct a hearing to determine whether the Act applies to a specific *N.J.S.A.* 2C:39–4a conviction.

*State v. Jefimowicz*, 119 *N.J.* 152, 155, 574 *A*.2d 428 (1990), involved a defendant who was convicted of armed robbery and possession of a weapon for an unlawful purpose. The defendant was sentenced to an extended term under the Graves Act because "[t]he trial court concluded that such sentencing was required because defendant had been convicted of armed robbery, a Graves Act offense, and defendant's criminal record alone established a prior conviction for a Graves Act offense." *Id.* at 154, 574 *A*.2d 428.

This Court disagreed with the Appellate Division's holding that the defendant was entitled to an additional hearing at which he could challenge the validity of his prior conviction. *Id.* at 154–55, 574 *A*.2d 428. We distinguished *State v. Martin*, 110 *N.J.* 10, 17, 538 *A*.2d 1229 (1988), which held that, pursuant to *N.J.S.A.* 2C:43–6d, "where the underlying record is unclear with respect to the nature of a prior conviction, a hearing is required at which the basis for an extended Graves Act term must be established." *Jefimowicz, supra,* 119 *N.J.* at 156, 574 *A*.2d 428. Because the basis for the defendant's prior conviction was a "plea of guilty as an accomplice to an aggravated assault, by knowingly pointing a firearm," an enumerated Graves Act offense, the Court found that the record raised "no uncertainty with respect to the use of a firearm in the commission of the [prior] offense." *Id.* at 157, 574 *A*.2d 428. Although the Court did not specifically indicate whether the trial court reached its conclusion after a hearing, the Court did state that "[b]ecause the record clearly establishes defendant's prior Graves Act conviction, no *further* hearing was required to clarify or elucidate the nature of that conviction." *Id.* at 161, 574 *A*.2d 428 (emphasis added). Fairly read, that statement implies

that the standard sentencing hearing was adequate to determine whether the record supported the assertion that the defendant was previously convicted of a Graves Act offense. Because the record clearly indicated that the defendant had been previously convicted of a Graves Act offense, any additional hearing in that circumstance would have been superfluous.

## III

We conclude that the person/property distinction is not an element of *N.J.S.A.* 2C:39–4a, but rather is relevant only for sentencing purposes. As noted, a defendant may be convicted pursuant to *N.J.S.A.* 2C:39–4a based on proof of possession of a firearm with the intent to use it either against the person or property of another. *Supra* at 69, 707 *A.*2d at 462. It is the Graves Act that prescribes that a period of parole ineligibility is mandatory *only* for those defendants convicted of that offense who intended to use the firearm against the *person* of another. Thus, the Graves Act itself makes clear that the distinction is relevant only to sentencing. A jury's findings relating to whether a defendant committed an offense enumerated by the Graves Act does not limit the court in its resolution of whether the Graves Act applies to that defendant. *Stewart, supra,* 96 *N.J.* at 607, 477 *A.*2d 300. Additionally, a court properly may consider whether a defendant exhibited the state of mind required for imposition of a Graves Act period of parole ineligibility. *White, supra,* 98 *N.J.* at 126, 484 *A.*2d 691.

As a practical matter, our holding facilitates the Law Division's disposition of cases in which defendants are charged with violating *N.J.S.A.* 2C:39–4a. If the theory of the State's case is that a defendant intended the use of a weapon only against the *person* of another, the jury verdict necessarily will establish that fact. To that extent, we have no disagreement with our dissenting colleague's assertion that if the State's prosecution is based on proof of intent to use a weapon against the *person* of another, a jury determination of that fact is mandatory. *Post* at 75, 707 *A.*2d at

465. However, when such cases proceed to trial based on proofs that a defendant intended to use a weapon against the person *or* property of another, a jury need not resolve the person/property distinction in order to determine a defendant's guilt. Thus, any concern about unanimity on that issue becomes academic. See *State v. Brown*, 138 *N.J.* 481, 511, 651 *A*.2d 19 (1994) (stating that jury need not be unanimous to support verdict that defendant was guilty of murder not committed by his own conduct). In the case of defendants who choose to plead guilty, there is no need to impanel a jury to decide the person/property distinction; that is an issue for the sentencing court, not for the jury. As a matter of judicial administration, our legal conclusion is consistent with the efficient disposition of indictments charging violations of *N.J.S.A.* 2C:39–4a.

To the extent that portions of the Appellate Division's opinion in *State v. Latimore, supra,* 197 *N.J.Super.* at 221, 484 *A*.2d 702, are inconsistent with our disposition of this matter, that opinion is disapproved. Contrary to the observation of the Appellate Division in this case, 295 *N.J.Super.* at 592, 685 *A*.2d 961, we hold that the statutory mandate that grounds for a Graves Act sentence be established at a hearing, *N.J.S.A.* 2C:43–6d, shall be adhered to in all cases. We also request that the Committee on Model Jury Charges, Criminal, revise the Model Criminal Jury Charge for *N.J.S.A.* 2C:39–4a in accordance with this opinion.

The judgment of the Appellate Division is reversed.

O'HERN, J., dissenting.

By reframing the question and selectively applying our prior precedent on the Graves Act, *N.J.S.A.* 2C:43–6c, the majority reverses the judgment of the Appellate Division. It holds that a judge, not a jury, may determine whether a defendant possessed a weapon for the purpose of using it against the person of another. In doing so, it disapproves long-standing precedent that has served to advance the efficient administration of the Graves Act.

The result of the Court's reasoning will be more work for lawyers and judges and less efficient administration of the Graves Act.

I

## The Question Presented

The question that the majority asks is whether a conviction of *N.J.S.A.* 2C:39–4a (possession of a weapon for an unlawful purpose) may be based on either the intent to injure the person or the property of another. The answer to that question is simple. It may be either. Hence, the majority reasons that the intent to injure the person of another is not an essential element of the offense.

That, however, is not the question in this case. The question in this case is how, in the language of the Graves Act, is one "convicted under 2C:39–4a of possession of a firearm with intent to use it against the person of another." By its framing of the issue, the majority avoids this central point in the case. That point is that the Graves Act, in setting forth the criteria for its applicability, creates a symmetry between *N.J.S.A.* 2C:39–4a and the other nine crimes, conviction of which brings the Graves Act into play. That symmetry is created by the first sentence of *N.J.S.A.* 2C:43–6(a). That sentence provides that a minimum jail term will be imposed on

> (a) a person who has been *convicted* under 2C:39–4a of possession of a firearm with intent to use it against the person of another or of a crime under any of [nine enumerated criminal statutes] while in the course of committing or attempting to commit the crime, including the immediate flight therefrom, used or was in possession of a firearm.
>
> [*N.J.S.A.* 2C:43–6c (emphasis added).]

The reason for the distinct treatment of 2C:39–4a is to harmonize it with the nine other predicate offenses for Graves Act sentencing so that each essentially involves the common feature of a crime against a person. In order to convict a defendant under 2C:39–4a, a jury must conclude that a defendant possessed a weapon, but a jury need not consider the use or possession of a

weapon or firearm in order to convict under any of the other nine crimes (murder, manslaughter, aggravated assault, kidnapping, aggravated sexual assault, aggravated criminal sexual contact, robbery, burglary, or escape) that bring the Graves Act into play. Although burglary and escape are not always crimes against the person, the attendant danger to persons is surely the wellspring of concern for Graves Act sentencing.

To repeat, the question is not whether one must commit a crime against a person in order to be convicted under *N.J.S.A.* 2C:39–4a. Rather, the question is how is one "convicted" of a crime against the person of another. Our State and Federal Constitutions guarantee criminal defendants the right to have juries decide whether those defendants deserve to be convicted. *U.S. Const.* amend. VI; *N.J. Const.* art. 1, para. 10. The majority should not waste the Appellate Division's efforts, both in this case and in *State v. Latimore*, 197 *N.J.Super.* 197, 221, 484 *A.*2d 702 (1984), to uphold those rights.

## II

### The Precedent Involved

Because a jury would ordinarily not have to resolve possession or use of a firearm in convicting a defendant of one of the other nine enumerated offenses, the Court held in *State v. Stewart*, 96 *N.J.* 596, 477 *A.*2d 300 (1984), that *N.J.S.A.* 2C:43–6c permits sentencing courts to determine whether a defendant used or possessed a weapon while committing one of those nine crimes. *Stewart* involved a robbery prosecution. As noted above, robbery is a predicate to the Graves Act. It is one of the predicate crimes that does not necessarily involve the possession of a gun but most often does involve a person as a victim. *N.J.S.A.* 2C:15–1. Robert Stewart argued that because a jury had acquitted him of armed robbery and weapons charges and only convicted him of unarmed robbery, it would be fundamentally unfair to allow the sentencing court to decide the Graves Act issue of whether Stewart used or possessed a firearm in the course of the robbery.

*Stewart, supra,* 96 *N.J.* at 605, 477 *A.*2d 300. We rejected his argument. We interpreted *N.J.S.A.* 2C:43–6d as placing in the trial judge's hands the determination of whether a defendant used or possessed a weapon while committing one of the nine person-threatening crimes. *Stewart, supra,* 96 *N.J.* at 605–06, 477 *A.*2d 300. We did not give the trial judge the power to determine whether a defendant threatened a person.

Nor does *State v. White,* 98 *N.J.* 122, 484 *A.*2d 691 (1984), lend any support to the majority's position. That case extended Graves Act sentencing to accomplices who have constructive knowledge that their co-felons will use or possess a firearm. *Id.* at 131, 484 *A.*2d 691. The Court emphasized that the defendant did not dispute that "he was properly found guilty of armed robbery upon the State's proofs that he knew, and indeed planned, that each of the robberies would be effected with the use of the handgun." *Id.* at 132, 484 *A.*2d 691. In short, while the *White* Court allowed the sentencing judge to determine whether the defendant constructively possessed a gun for Graves Act purposes, the enumerated predicate offense was established by the conviction.

*State v. Des Marets,* 92 *N.J.* 62, 455 *A.*2d 1074 (1983), is also unhelpful to the majority. Robert Des Marets pled guilty to two charges of burglary. Because he had stolen two handguns in the course of one of the burglaries, the sentencing court read the Graves Act to mandate a minimum three-year term of imprisonment. Des Marets contended that the Graves Act should not apply because he never demonstrated any intent to use either of the firearms. The Court undertook a straightforward reading of *N.J.S.A.* 2C:43–6c and held that intent to use a firearm was not a prerequisite to Graves Act applicability. Mere possession of a firearm would trigger the minimum sentence provisions. *Des Marets, supra,* 92 *N.J.* at 68–69, 455 *A.*2d 1074. However, the statute just as clearly states that mere possession of a gun will not trigger the Graves Act for a defendant convicted under *N.J.S.A.* 2C:39–4a. The statute states that such defendants must be con-

victed of having an intent to use their firearm against a person.
The *Des Marets* Court did not say that a sentencing judge could
determine whether a defendant had that intent. In fact, *Des
Marets* explicitly emphasized that the express inclusion of a
requirement of intent to *use* the firearm *against the person* of
another in *N.J.S.A.* 2C:39–4a argued against that as a jury re-
quirement in the case of the nine other enumerated offenses. 92
*N.J.* at 69, 455 *A.*2d 1074.

To repeat, the use or possession of a gun that triggers a Graves
Act sentence is often not an essential element of the offense for
which a Graves Act sentence may be imposed. For example, one
may commit a rape with or without a gun; one may commit a
robbery with or without a gun. Sometimes the sentencing court
has to decide whether the weapon brandished was in fact a real
gun and not a toy. Only if the actor uses a real gun will the
Graves Act minimum eligibility term be imposed. *State v. Gantt*,
101 *N.J.* 573, 584, 503 *A.*2d 849 (1986). But whether the gun is
real or not is irrelevant to whether the actor may have committed
first-degree robbery. In such a setting, there is no real potential
for a conflict between a jury verdict and the sentencing decision
because a jury considering a robbery prosecution need not even
consider the defendant's choice of weapon. In prosecutions under
*N.J.S.A.* 2C:39–4a, however, the potential for conflict exists. A
jury may convict a defendant under that statute based on an
intent to fire at the victim's TV set. At a sentencing hearing, a
judge under today's ruling may then convict the same defendant of
intending to shoot the victim.

## III

### The Need for a Special Verdict Form in Such Cases

Because only a jury and not a judge may convict a defendant of
an offense when a jury trial has been demanded, I disagree with
the disapproval of the special verdict form approved for use in
*State v. Latimore*, 197 *N.J.Super.* 197, 484 *A.*2d 702 (App.Div.
1984). The majority criticizes the *Latimore* opinion for ignoring

this Court's decision in *Stewart.* The criticism is misplaced. *Stewart* never held that a court may convict of the offense that is predicate to a Graves Act sentence. *Latimore* involved a prosecution under *N.J.S.A.* 2C:39–4a whereas *Stewart* involved a prosecution for robbery, one of the nine other crimes enumerated in the Graves Act. The *Latimore* court did not follow *Stewart* because, unlike the majority, it recognized the distinction under the Graves Act between *N.J.S.A.* 2C:39–4a and the other nine enumerated crimes.

Although it is true that a conviction under 2C:39–4a for possession of a weapon with intent to use it unlawfully may be obtained without specifying whether the defendant intended to use the weapon against the person or property of another, it does not follow that the defendant does not have a right to request that the jury specify for what purpose the weapon was used. A jury need not always agree unanimously on every fact that establishes the essential elements of an offense. *See State v. Parker,* 124 *N.J.* 628, 633–35, 592 *A.*2d 228 (1991). When, however, there is a possibility of a patchwork verdict because some jurors may believe the defendant guilty on one basis and others on another, a jury may be required to specify its findings. *Id.* at 637, 592 *A.*2d 228. Our law has long required that "a jury instruction on a charge of gun possession for unlawful purpose must include an identification [by the court] of such unlawful purposes as may be suggested by the evidence." *State v. Jenkins,* 234 *N.J.Super.* 311, 316, 560 *A.*2d 1240 (App.Div.1989). Thus, the Model Jury Charge currently in use requires the court to set forth the State's contention concerning the defendant's unlawful purpose in possessing the firearm. *Model Jury Charges (Criminal)* § 2C:39–4a, Possession of a Firearm with a Purpose to Use It Unlawfully Against the Person or Property of Another (Mar. 30, 1993). If a hypothetical defendant were charged with having possessed a gun for the purpose of shooting Smith's car and threatening to shoot Jones, it is inescapable to me that a court may not refuse to have the jury indicate for which of the two purposes (or both) it found the defendant had unlawfully possessed the gun.

Writing for the Court in *State v. Diaz,* 144 *N.J.* 628, 677 *A.*2d 1120 (1996), Justice Coleman recently "reaffirm[ed] the propriety of using the type of written special verdict sheets recommended in *State v. McAllister* [211 *N.J.Super.* 355, 365–67, 511 A.2d 1216 (App.Div.1986) ]." The special verdict sheet in *McAllister* specifically referred to "possession of a weapon with the purpose of using it unlawfully *against a person.*" 211 *N.J.Super.* at 365, 511 *A.*2d 1216 (emphasis added). Hence, although the majority seems to believe that its decision will simplify things, the decision will likely result in more work for lawyers and judges, and more trials rather than fewer in most instances. Competent counsel will not permit patchwork verdicts in cases in which the conviction predicate to a Graves Act sentence is in doubt.

As an aside, this conviction is quite sustainable on the basis that the defendant waived his right to trial by jury. If he insists on repleading, the State should be free to reinstate the aggravated assault counts. I doubt the defendant really wants that.

Justice POLLOCK joins in this opinion.

*For reversal*—Chief Justice PORITZ and Justices HANDLER, GARIBALDI, STEIN and COLEMAN—5.

*Dissenting*—Justices O'HERN and POLLOCK—2.