654 A.2d 979

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. DONALD
A. PETTIES, DEFENDANT–RESPONDENT.

Argued November 28, 1994—Decided March 20, 1995.

*Simon Louis Rosenbach,* Assistant Prosecutor, argued the cause for appellant (*Robert W. Gluck,* Middlesex County Prosecutor, attorney).

*Mark H. Friedman,* Assistant Deputy Public Defender, argued the cause for respondent (*Susan L. Reisner,* Public Defender, attorney).

*Lisa Sarnoff Gochman,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*Deborah T. Poritz,* Attorney General, attorney).

The opinion of the Court was delivered by

O'HERN, J.

This case presents the other side of the coin seen in *State v. Harmon,* 104 *N.J.* 189, 516 *A.*2d 1047 (1986). A jury acquitted Harmon of aggravated assault for pointing a firearm at another but convicted him of possession of the weapon for an unlawful purpose. He appealed, claiming that he had been denied the right to show the jury that he had brought the weapon, a BB gun, to the scene for a lawful purpose. The trial court refused to permit him to assert that he had possessed the gun only as a precaution against a possible life-threatening attack. We held that the unlawful use of a gun (Harmon admitted that he had pointed the gun at another) did not establish that its possession had at all prior times been for that unlawful purpose. *Id.* at 217, 516 *A.*2d 1047. In this case we hold that an acquittal of the commission of a crime with a gun does not establish that its prior possession had always been for a lawful purpose. We therefore vacate the trial court's order setting aside guilty verdicts on charges of possession of weapons for an unlawful purpose after a jury acquitted defen-

dant of the substantive crimes involving misuse of the guns. However, we remand those unlawful-possession charges for retrial because the instructions given were inadequate to guide the jury in its deliberations.

## I

The case arises from the anger of a jealous husband. On September 18, 1992, defendant went to the home of Alton Pearson on Lawrence Street in New Brunswick. Defendant suspected that Pearson was having an affair with his wife, Helen Petties. Cassandra Edwards, a visiting relative, answered the door of Pearson's home at about 5:30 p.m. She told defendant that Pearson was not at home. Defendant told her that Alton Pearson was "messing around" with his wife and that he wanted to "resolve the situation." Catherine Pearson, Alton's mother, was also at the home and became involved in the discussion with defendant. Defendant left after a few minutes but said that he would be "back in an hour."

The versions given of the incident thereafter differ. All agree that defendant returned to the Pearson home with his wife and sat in the car in front of the home to wait for Alton Pearson. When Alton Pearson arrived, defendant got out of his car and approached him. The two men exchanged words about Pearson's relationship with Helen Petties. Pearson said that Helen Petties was "just a friend." Catherine Pearson, Cassandra Edwards, and Cassandra's young child, Jasmine, were "inches" away from the confrontation. The two women testified that defendant threatened Pearson, whispering in his ear that he was a "marked" man. Alton Pearson, a reluctant witness who attempted to have the charges against defendant dropped, said he did not recall such a threat.

Cassandra and Alton testified that defendant then retrieved a handgun from his car and pointed it at Alton Pearson for a few seconds while Pearson's family was standing still next to him. Pearson's mother said that when defendant pointed the handgun

at Alton, she jumped between the two men and pleaded for her son's life.

Defendant testified that he had gone to his car intending to leave when Alton Pearson came at him from behind. He then grabbed a handgun from the console by the passenger's seat in the car. Defendant said a friend who had "heard about the situation" had given him the handgun earlier that day and defendant had placed it in the car. Defendant testified that he only "palmed it," keeping the handgun at his side, and did not point it at anyone. He said that he just wanted the crowd to back off and that he had no intention of firing the weapon.

Cassandra testified that instead of leaving after the pistol incident, defendant got out of the car again, opened the trunk, and pulled out a rifle. He pointed the rifle at his wife and threatened to kill her. Then he waved the rifle at everyone present. Catherine Pearson testified that defendant did not point the rifle at anyone in particular. Instead, he waved the rifle in front of Helen, Alton, and the Pearson family. Alton Pearson said that he left after defendant put the handgun back in the car, and that he saw no rifle. Defendant's version was that he felt his car was being trapped by a crowd and he briefly held the rifle in the air without pointing it at anyone.

Defendant and his wife then got back into the car and drove away. Cassandra called the police. Defendant and his wife were almost at their home in Piscataway when the police stopped and searched their car. The police found both weapons. The handgun was loaded with the safety on, and the rifle was empty with the safety off.

Defendant was indicted and tried on five counts of aggravated assault (pointing a firearm at the two suspected lovers, the two adult relatives, and the child bystander), two counts of possession of a weapon for an unlawful purpose (one count for each of the weapons), and one count of unlawful possession of a weapon (the handgun) without a permit. In charging the aggravated-assault counts, the court charged lesser-included offenses of simple as-

sault (attempting by physical menace to put another in fear of imminent serious bodily injury) and harassment (engaging in conduct intended to alarm or seriously annoy another person). The court gave a sequential charge, instructing the jury that it could not consider lesser-included offenses unless it first unanimously acquitted defendant of the five counts of aggravated assault. See *State v. Coyle*, 119 *N.J.* 194, 223–24, 574 *A*.2d 951 (1990) (cautioning about potential confusion of "acquittal first" instructions). The jury convicted defendant of all weapons-possession offenses but acquitted him of the aggravated-assault charges. The jury was unable to reach a verdict on the lesser-included offenses of simple assault against Catherine Pearson and Alton Pearson. The jury acquitted defendant of all other lesser-included offenses.

Defendant moved for judgments of acquittal notwithstanding the verdicts on the charges of possession of a weapon for an unlawful purpose. The trial court granted the motion and ordered that those two counts be dismissed. In doing so, it relied on *State v. Jenkins*, 234 *N.J.Super.* 311, 560 *A*.2d 1240 (App.Div.1989). The *Jenkins* court held that when a defendant is acquitted of aggravated assault with a weapon and no evidence other than the account of the alleged assault is adduced to prove a charge of possession of the weapon for an unlawful purpose, a jury cannot convict on the possession charge because it is left to speculate on the unlawful purpose. *Id.* at 315–16, 560 *A*.2d 1240.

The Appellate Division denied without opinion the State's motion for leave to appeal. We granted the State's motion for leave to appeal to this Court. 136 *N.J.* 26, 641 *A*.2d 1038 (1994).

## II

This case involves regulatory offenses dealing with the possession of firearms. We have repeatedly emphasized the unique nature of such regulations. Chapter 39 of the 1979 Code of Criminal Justice, *N.J.S.A.* 2C:39–1 to –15, was derived mainly from pre-Code law. Chapter 39 represents a very carefully

structured "grid" of gun controls. *State v. Ingram,* 98 *N.J.* 489, 495 n. 1, 488 *A.*2d 545. (1985). (Chapter 39 also regulates the use of other deadly weapons, such as knives. *State v. Lee,* 96 *N.J.* 156, 475 *A.*2d 31 (1984). We, however, limit this discussion to gun controls.) ·The point of those regulatory offenses is to grade the weapons offenses by the threat that they pose to society. Possession of a handgun without a permit is a third-degree offense. *N.J.S.A.* 2C:39–5b. Possession of a firearm with the intent to use it against another is a second-degree offense, *N.J.S.A.* 2C:39–4a, but most significantly such possession is a Graves Act offense for which a period of parole ineligibility is mandatory. *N.J.S.A.* 2C:43–6c. The theory of the Graves Act is that a person who commits certain crimes with a firearm must go to jail. *State v. Des Marets,* 92 *N.J.* 62, 73, 455 *A.*2d 1074 (1983).

The jury convicted Petties of two violations of *N.J.S.A.* 2C:39–4a, which provides: "Any person who has in his possession any firearm with a purpose to use it unlawfully against the person or property of another is guilty of a crime of the second degree."

The statute does not require the State to obtain a conviction for underlying unlawful conduct. We said in *Harmon, supra,* 104 *N.J.* at 212, 516 *A.*2d 1047:

> [T]o sustain a conviction under *N.J.S.A.* 2C:39–4(a), the State must prove beyond a reasonable doubt the following four facts: (1) the item possessed was a "firearm" within the meaning of *N.J.S.A.* 2C:39–1(f); (2) the defendant "possessed" it, which under *N.J.S.A.* 2C:2–1(c) requires knowledge or awareness of his control over the item; (3) the defendant's purpose or conscious objective was to use it against the person or property of another; and (4) the defendant intended to use it in a manner that was proscribed by law.

The unlawful purpose or state of mind must exist at whatever time the State claims the possessory offenses took place. *Id.* at 210, 516 *A.*2d 1047.

Possession of a gun is not always and everywhere criminal. One may possess an unlicensed handgun at home. *N.J.S.A.* 2C:39–6e. One may not, however, carry a handgun without a permit. *N.J.S.A.* 2C:39–5b. Although we may legally possess a handgun at home, we may not possess it for an unlawful purpose.

If a search were to disclose large quantities of drugs and cash in a home, one might infer that any handguns found in the home were possessed for the unlawful purpose of aiding drug trafficking. Does that mean that a prosecutor would have to show specifically which completed crime the actor intended with the guns? We think not. The unlawful purposes alleged by the State may be inferred from the circumstances. In *State v. Latimore*, 197 *N.J.Super.* 197, 211, 484 *A.*2d 702 (App.Div.1984), *certif. denied*, 101 *N.J.* 328, 501 *A.*2d 978 (1985), the court sustained unlawful-purpose convictions when several youths were found in possession of weapons at 3:00 a.m. in a parked car with the engine running and the lights out.

■ The means of acquisition of a gun and its actual or ultimate uses are, if not irrelevant, not determinative of whether a regulatory offense has occurred. In this case, as long as the jury could have found that possession for an unlawful purpose existed at or before the confrontation at Alton Pearson's house (and surely the jury could have so found), then the jury was entitled to return a verdict of guilty for a violation of *N.J.S.A.* 2C:39–4a.

The State's theory is that

the jury was entitled to conclude, based upon all of the evidence adduced by the State, that defendant took two firearms, placed them in his car, and with the purpose to assault Alton Pearson or other people drove with the weapons to Pearson's house. The jury was equally entitled to conclude that defendant had abandoned this purpose by the time he reached Pearson's house, or the jury was equally entitled to conclude that [defendant], although he continued to desire to assault Pearson, simply did not assault him. Either of these alternatives, however, nevertheless permits the verdict that defendant did at some time on [the day of the incident] possess the two firearms with the unlawful purpose of assaulting Pearson.

That the jury could not agree whether defendant had actually pointed his guns at his wife, Alton Pearson, or the bystanders does not mean that he brought the guns to the scene for a benign purpose. The focus of the unlawful-purpose charges was on the confrontation, the end point of defendant's possession. But that was not the only time of his possession. *See State v. Truglia*, 97 *N.J.* 513, 521, 480 *A.*2d 912 (1984) (holding merger of unlawful-purpose offense not required when possession offense and aggra-

vated-assault-with-weapon offense could have occurred at different times).

To conclude that every acquittal of the substantive charge involving the use of a gun requires an erasure of the charge of possession for an unlawful purpose would be an overreading of *Jenkins, supra,* 234 *N.J.Super.* 311, 560 *A.*2d 1240. *Harmon, supra,* 104 *N.J.* at 207 n. 9, 516 *A.*2d 1047, gives a few such examples. In *State v. Lopez,* 213 *N.J.Super.* 324, 329–30, 517 *A.*2d 457 (App.Div.1985), *certif. denied,* 103 *N.J.* 480, 511 *A.*2d 657 (1986), Lopez' conviction of possession for an unlawful purpose was not inconsistent with his acquittal of murder because the jury could have concluded that although he initially possessed the gun for an assault, he ultimately killed in self-defense when the victim fired first. In *People v. Colon,* 109 *Misc.*2d 442, 442 *N.Y.S.*2d 346, 348 (App.Term 1981), also cited in *Harmon,* Colon's conviction of possession of a knife with wrongful intent was not irreconcilable with her acquittal of assault with the knife. The jury was entitled to conclude that Colon's possession was wrongful but that she justifiably stabbed the complainant in self-defense when the complainant attacked her first. Conversely, a conviction of the substantive charge does not establish that the possession was unlawful. *See State v. Mieles,* 199 *N.J.Super.* 29, 40–41, 488 *A.*2d 235 (App.Div.), *certif. denied,* 101 *N.J.* 265, 501 *A.*2d 933 (1985) (explaining that taxi driver who committed aggravated assault with firearm could have possessed weapon for only precautionary purpose). In each case, it is the subjective intent of the actor during the entire period of possession that determines guilt.

*Jenkins, supra,* 234 *N.J.Super.* 311, 560 *A.*2d 1240, may be idiosyncratic in that it involved the bizarre circumstances of sounds in a parking lot suspected to be the defendant firing a weapon at his wife. At trial, Jenkins' wife and stepdaughter testified to hearing "popping or firecracker-like sounds that could have been shots. They saw no gun." *Id.* at 314, 560 *A.*2d 1240. Jenkins said that his backfiring car might have made the sounds. No weapons, cartridges, or bullets were recovered. Acquittal of

the substantive charges of aggravated assault left no other plausible version of events to sustain a charge of unlawful possession at any time prior to the end point of possession. Either there was a gun or there was not a gun. (Jenkins' simple-assault conviction was predicated on evidence that he had earlier knocked his wife down.)

In this case, there was plainly a gun. There were two guns. Confronted with the conflicting testimony about whether defendant had pointed the pistol at the Pearson family, or the rifle at his wife and the Pearson family (recall that Alton said that he had left before defendant took out the rifle), the jury could rationally have acquitted defendant of pointing the guns or making the other threats (whispering to Alton that he was a "marked" man or telling his wife and the Pearson family "I can kill you") but yet conclude unanimously and beyond a reasonable doubt that defendant had left the Pearson home at 5:30 p.m. and returned armed with the weapons for the unlawful purpose of threatening or intimidating Alton (aggravated assault) or placing his family members in fear (simple assault), and yet have relented on that purpose.

Hence, these verdicts are not inconsistent. Of course, defendant had no duty to offer an explanation of a lawful purpose (the presumption of innocence assures him of that), but there was no suggestion that he was en route to target practice or that he was going hunting with the weapons. See N.J.S.A. 2C:39–6f(1) and (2) (excepting such purposes from certain permit requirements). There is evidence that he picked up the firearms from someone in his neighborhood who had "heard about the situation," presumably the situation involving Alton and Helen. The State need not have a statement of intent from the possessor of the weapons, or a completed or specific offense to sustain the conviction. Latimore, supra, 197 N.J.Super. at 211, 484 A.2d 702. Circumstantial evidence can suffice to establish an unlawful purpose. In Latimore, "[t]he circumstance that the vehicle was parked at an early hour of the morning with the engine running

and the lights out is sufficient to support an inference that the weapons were possessed with a purpose to use them unlawfully at least against the property of another." *Ibid.* Of course, the court must guide the jury in its determination of the unlawful purposes alleged. Therefore, we need not decide whether we should accept the unlawful-possession verdicts if they were in fact inconsistent. Inconsistent verdicts are normally permitted "so long as the evidence was sufficient to establish guilt on the substantive offenses beyond a reasonable doubt." *State v. Kamienski,* 254 *N.J.Super.* 75, 95, 603 *A.*2d 78 (App.Div.), *certif. denied,* 130 *N.J.* 18, 611 *A.*2d 656 (1992). Review of the sufficiency of the evidence on the guilty verdict is independent of the jury's determination that evidence on another count was insufficient. *United States v. Powell,* 469 *U.S.* 57, 67, 105 *S.Ct.* 471, 478, 83 *L.Ed.*2d 461, 470 (1984). Suppose the police had intervened just as defendant was going to his car to get the pistol and the police lawfully recovered the weapons. Because there is evidence that defendant called Pearson a "marked" man and came to the scene "to resolve the situation," we would have no doubt that a jury could rationally conclude that his purpose in bringing guns to Lawrence Street was to intimidate Alton Pearson unlawfully.

It is perhaps regrettable that the jury may have thought that it was doing the defendant a favor by acquitting him of the assault counts while convicting him of the unlawful-purpose counts. The jury did not know the consequences of its verdict. A prosecutor can now take account of any mitigating circumstances that may warrant departure from the usual strictures of the Graves Act. *N.J.S.A.* 2C:43–6.2.

### III

A more troublesome issue is one not directly raised in this appeal: whether the instructions on the unlawful-purpose counts adequately guided the jury. We agree with so much of *Jenkins, supra,* that holds:

A jury is not qualified to say without guidance which purposes for possessing a gun are unlawful under *N.J.S.A.* 2C:39–4a and which are not. For that reason, because a conviction for a coupled active crime cannot be counted on to supply the unlawful purpose, a jury instruction on a charge of gun possession for unlawful purpose must include an identification of such unlawful purposes as may be suggested by the evidence and an instruction that the jury may not convict based on their own notion of the unlawfulness of some other undescribed purpose. [234 *N.J.Super.* at 316, 560 *A.*2d 1240 (footnote omitted).]

The charge in this case did not meet that standard. The Model Jury Charge (revised in 1993, after the trial in this case) properly guides the jury:

[T]he State must prove beyond a reasonable doubt * * * that the defendant had a purpose to use the firearm in a manner that was prohibited by law. * * * The mental element of purpose to use a firearm unlawfully requires that you find that the defendant possessed a firearm with the conscious objective, design or specific intent to use it against the person or property of another in an unlawful manner as charged in the indictment, and not for some other purpose. In this case, the State contends that the defendant's unlawful purpose in possessing the firearm was

(describe the [purpose of defendant's possession] of the weapon)
[If applicable] The defense on the other hand contends that

You must not consider your own notions of the unlawfulness of the defendant's purpose, but must consider whether the State has proven the specific unlawful purpose charged.[1]

To resolve issues of merger of weapons offenses with substantive counts, a court may ask the jury to determine by separate verdicts whether the possession was solely with the unlawful purpose to use the weapon against the victim or victims of the substantive offense, or with a broader unlawful purpose. *See State v. Williams,* 213 *N.J.Super.* 30, 36–37, 516 *A.*2d 265 (App. Div.1986) (explaining that although defendant may have intended to use firearm for broader unlawful purpose—threatening associ-

---

1 As currently formulated, the Model Charge suggests that the court "describe the use of the weapon" to illustrate the unlawful purpose alleged. We request that the Model Criminal Jury Charge Committee consider whether the instruction might better focus the jury's deliberations by describing the alleged purpose of the defendant's possession of the weapon.

ates of victim—jury instruction on charge of possession for unlawful purpose was limited to unlawful use against victim, thus requiring merger), *certif. denied,* 107 *N.J.* 104, 526 *A.*2d 177 (1987). *State v. McAllister,* 211 *N.J.Super.* 355, 364–67, 511 *A.*2d 1216 (App.Div.1986) contains a suggested form of a verdict sheet, which can be revised to fit the needs of each case.

■ In a case such as this, the trial judge should explain to the jury that the criminal purpose or state of mind may "exist at *whatever time* the State claims that the possessory offense took place," *Harmon, supra,* 104 *N.J.* at 210, 516 *A.*2d 1047 (emphasis added), and relate the specific unlawful purpose charged to the facts of the case. *See State v. Concepcion,* 111 *N.J.* 373, 379, 545 *A.*2d 119 (1988) (instructing trial judges to "mold the instruction in a manner that explains the law to the jury in the context of the material facts of the case").

As noted, this case is before us on the State's motion for leave to appeal from the trial court's order setting aside the verdicts on the counts of possession of weapons with an unlawful purpose. Were we to reinstate those convictions, defendant would be entitled to appeal therefrom after sentencing. The Appellate Division would be constrained to recognize even as plain error the trial court's failure to specify the unlawful purpose that the State alleges defendant had at the time he possessed the weapons. *State v. Goode,* 278 *N.J.Super.* 85, 88, 650 *A.*2d 393 (App.Div.1994) (reversing convictions for failure to specify in jury charge the unlawful purpose that State alleged defendant had at time of possession).

Rather than reinstate the convictions and await a probable reversal, in the interest of judicial economy we direct a retrial of the reinstated unlawful-purpose counts and the other counts of the indictment that were not resolved by the jury.

## IV

We vacate the trial court's order setting aside the verdicts on the unlawful-purpose charges and dismissing those counts. We

remand the matter to the Law Division for further proceedings in accordance with this opinion.

*For vacation and remandment*—Chief Justice WILENTZ and Justices POLLOCK, O'HERN, GARIBALDI, and STEIN—5.

*Opposed*-none.