782 A.2d 988 (2001)
344 N.J. Super. 583
STATE of New Jersey, Plaintiff-Respondent,
v.
Monserat OLIVERA, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 11, 2001.
Decided November 1, 2001.
*989 Peter A. Garcia, Acting Public Defender, attorney for appellant (Kevin G. Byrnes, Princeton, Designated Counsel, of counsel and on the brief).
Glenn Berman, Middlesex County Prosecutor, attorney for respondent (John N. Shaughnessy, Assistant Prosecutor, of counsel and on the brief).
Before Judges CONLEY, LEFELT and LISA.
The opinion of the court was delivered by LISA, J.A.D.
Defendant was indicted for two counts of third-degree luring, N.J.S.A. 2C:13-6, involving separate incidents and different victims, occurring approximately one year apart. The two counts were tried together. At the end of the State's case the judge entered a judgment of acquittal on one count. Defendant was convicted on the other count and sentenced to three years imprisonment and mandatory monetary penalties.
On appeal, defendant contends: POINT I
THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. 1 PAR. 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY THE TRIAL COURT'S FAILURE TO DEFINE THE ELEMENTS OF THE OFFENSE OF LURING
POINT II
THE TRIAL COURT'S GENERAL INSTRUCTION TO THE JURORS THAT THEIR VERDICT MUST BE UNANIMOUS WAS INADEQUATE BECAUSE IT ALLOWED A VERDICT OF GUILTY ON A SINGLE CHARGE TO BE BASED ON THE COMMISSION OF DISTINCT CRIMINAL ACTS AND CRIMINAL INTENTS: THE JURY UNANIMITY INSTRUCTION SHOULD HAVE REQUIRED THE JURORS TO REACH A UNANIMOUS DECISION ON THE PREDICATE FACTS GIVING RISE TO CRIMINAL LIABILITY (Not Raised Below)
POINT III
THE DEFENDANT'S RIGHT TO REMAIN SILENT AS GUARANTEED BY THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE NEW JERSEY COMMON LAW WAS VIOLATED BY THE ADMISSION OF EVIDENCE THAT HE HAD INVOKED HIS PRIVILEGE AGAINST SELF INCRIMINATION DURING CUSTODIAL INTERROGATION (Not Raised Below)
POINT IV
THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. 1 PAR. 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY THE TRIAL COURT'S FAILURE [TO] GRANT A SEVERANCE
POINT V
*990 THE DEFENDANT'S RIGHT TO A FAIR TRIAL AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. 1 PAR. 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY PROSECUTORIAL MISCONDUCT DURING CLOSING STATEMENTS (Not Raised Below)
POINT VI
THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL SHOULD HAVE BEEN GRANTED
POINT VII
THE DEFENDANT'S SENTENCE IS EXCESSIVE:
THE TRIAL COURT ERRED BY IMPROPERLY BALANCING THE AGGRAVATING AND MITIGATING FACTORS
We agree that the jury instruction was fatally flawed, and we reverse.

I
On May 7, 1997, at approximately 8:15 a.m., thirteen-year-old E.T. was walking alone to her seventh grade class at the Lynwood School in North Brunswick. A gray van slowed down as it passed her, and the driver looked at her. Soon thereafter the van pulled up beside her again. This time it stopped. The driver, who was the van's sole occupant, began a conversation with E.T., asking her whether she went to Lynwood School and what grade she was in. E.T. stopped on the sidewalk. The driver then asked if she liked or played sports, to which E.T. replied in the negative. He then stated he had some sports equipment in the back of the van. E.T. was within approximately one block of her school at this point, and she walked away. The driver, who had never exited the van, left the scene.
E.T. reported this incident to her father, who reported it to the police. E.T. gave a statement to the police. She described the van as gray, with no windows except on the driver's and passenger's doors, with a white box containing black lettering. She described the driver as a Hispanic male in his late thirties or early forties, with missing teeth and dark hair. The police made a record of the incident and of her statement, but there was no further activity regarding this incident until approximately one year later.
On April 13, 1998,[1] shortly after 8:00 a.m., thirteen-year-old E.R. was walking alone to her seventh grade class at the Lynwood School in North Brunswick. The weather was clear and dry. By happenstance, Detective Tocci, of the North Brunswick Police, driving an unmarked vehicle, observed a brown "van pull over in the roadway with a gentleman's head speaking out the window talking to the young lady." Tocci pulled over and observed.
E.R. described her interaction with the driver, the sole occupant of the van. He slowed down and started talking to her, asking if she went to the school. He said his son had gone to that school. He then asked if she spoke Spanish. She said she did, and he began speaking to her in Spanish. "He said do I need a ride to school and then like he waved over and then he opened the passenger side and said come in, on the right." Being less than a block from the school, E.R. stated "the school's right there." The van drove off.
Tocci immediately pulled up to E.R. and inquired whether she knew that man and *991 what he wanted. When she told him, Tocci pursued the van, which pulled into a nearby carpet business, where the driver, defendant, worked. Defendant acknowledged to Tocci that he offered E.R. a ride to school, stating that he knew her father, with whom he played baseball. Tocci returned to the school and asked E.R. whether the man had said anything to her about her father or playing baseball with him. She said he had not. Tocci interviewed E.R.'s parents, who denied any knowledge of defendant.
The following day, after learning of the May 7, 1997 incident and speaking to the officer who investigated that incident, Tocci arrested defendant on an outstanding motor vehicle warrant. After being Mirandized,[2] defendant admitted lying about knowing E.R. and her father. Defendant acknowledged that in May 1997 he worked for Metuchen Sporting Goods in New Brunswick and drove a gray van for that employer, which "had the name of the business on the side and a white box with black lettering." Tocci confirmed this information with Metuchen Sporting Goods and produced photographs of the van at trial. Defendant denied any knowledge of the May 7, 1997 incident with E.T.
Tocci then contacted E.T., and on May 8, 1998 displayed a photo array to her. She was nervous, but quickly picked out defendant's photograph, stating she was fifty percent sure of her identification of the man in the gray van a year earlier. She did not select any other photographs.
The only witnesses at the trial were E.T., E.R. and Tocci. The trial judge granted defendant's motion for a judgment of acquittal at the end of the State's case on count one pertaining to the May 7, 1997 incident with E.T. R. 3:18-1. The jury convicted defendant on count two, pertaining to the April 13, 1998 incident with E.R.

II
A person is guilty of luring "if he attempts to lure or entice a child into a motor vehicle, ... with a purpose to commit a criminal offense with or against the child." N.J.S.A. 2C:13-6. The elements of this offense are (1) that defendant attempted to lure or entice into a motor vehicle;[3] (2) a child (defined in N.J.S.A. 2C:13-6 as a person less than eighteen-years-old); and (3) that defendant had a purpose to commit a criminal offense with or against the child. The critical issue in this case pertains to the third element, on which defendant argues the trial court failed to properly instruct the jury. Prior to sentencing, defendant's motion for a new trial on this issue was denied.
The Legislature has chosen to condition a defendant's culpability for luring on a purpose to commit a "criminal offense," a term which we equate with "crime," defined as "[a]n offense ... for which a sentence of imprisonment in excess of 6 months is authorized." N.J.S.A. 2C:1-4a. Offenses in the Code which are designated as disorderly or petty disorderly offenses are not crimes. N.J.S.A. 2C:1-4b.[4] Had the Legislature intended some lesser purpose, it would have chosen different language. See, e.g. burglary *992 (N.J.S.A. 2C:18-2) (purpose to commit "an offense"); possession of a weapon for an unlawful purpose (N.J.S.A. 2C:39-4) (purpose to use the weapon "unlawfully").
The legislative history supports this construction. The sponsor's statement accompanying the original bill stated: "The sponsor believes that this fourth degree crime may close a gap between criminal charges of attempted kidnapping and the lesser offense of harassment for those instances in which a person unsuccessfully tries to lure a child into a motor vehicle with a criminal purpose." Statement, S.1524 (Introduced Feb. 1, 1993) (emphasis added). The official legislative history includes a news article stating: "Anyone convicted of attempting to lure a child into a car to commit a crime would be sentenced to a minimum of three years in prison under a bill signed by Gov. Jim Florio yesterday." Child Kidnap Bill Signed, Trenton Times, Dec. 22, 1993 (emphasis added).
In discussing the relevance to luring of a defendant's prior statement about his attraction to young girls, our Supreme Court observed:
Being sexually attracted to young girls does not, as defendant properly asserts, prove that he intended to commit a crime, much less a crime of a sexual nature against A.P. However, it does make it more likely that defendant's purpose in beckoning to A.P. was to commit a sexual crime with or against her.
[State v. Covell, 157 N.J. 554, 566-67, 725 A.2d 675 (1999)(emphasis added).]
We stress that a purpose to commit a crime is required because much that is inappropriate, unseemly, reprehensible, or even unlawful, falls below that threshold. Defendant argues that the trial court's instructions to the jury defining the critical third element of luring were impermissibly broad, thereby denying him of his right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Paragraph 1 of the New Jersey Constitution.
Correct jury instructions are essential to a fair trial. State v. Grunow, 102 N.J. 133, 148-49, 506 A.2d 708 (1986). Erroneous jury instructions on points crucial to a jury's deliberations on the guilt of a criminal defendant, are presumed to be reversible error, State v. Warren, 104 N.J. 571, 579, 518 A.2d 218 (1986), and are "poor candidates for rehabilitation under the harmless error philosophy." State v. Simon, 79 N.J. 191, 206, 398 A.2d 861 (1979).
In light of these principles, we evaluate the instructions given by the trial judge on the third element of luring. In his initial charge, the judge stated:
Three, that the defendant's purpose in attempting to lure or entice the child into a motor vehicle was to commit a criminal offense with or against the child.
....
Criminal offense means a breach or a violation of the criminal laws. Our own criminal statute says that a criminal offense includes any conduct for which a sentence of imprisonment in excess of six months is authorized. So any criminal offense means any conduct for which you can be sent to jail for more than six months.
....
With regard to that, of course, the State does not have to prove that the defendant intended to commit a particular offense. Only that it was his purpose to commit some criminal offense with or against the child. With regard to that the State is alleging that there *993 was a purpose to endanger the welfare of a child and there is a statute on that and consequently we think of impairing or endangering the welfare of a child with respect to sexual conduct of some kind. And we generally say it's conduct that would impair or debauch the morals of a child. That's what the statute says. If you engage in conduct that impairs or debauches the morals of a child then you're guilty of a crime.
A person in order to commit a crime of endangering the welfare of a child under that statute would have to knowingly engage in some sexual conduct which would cause such a result as it would impair the morals of a child, would debauch the morals of a child. A prohibited sexual act would include such things as nudity, simulated sex, if it's depicted for the purpose of sexual stimulation or gratification. It could also include sexual contact. Sexual contact would mean an intentional touching by a person either directly or through clothing of the victim's intimate body parts, and the intimate parts means the following body parts according to our statute in this case: sexual organs, that is, the genital area, the anal area, the inner thigh, the groin, the buttocks, the breasts. All of those areas are, of course, areas that are considered to be private and which cannot be invaded by anyone else obviously without proper consent that a child is not able to give consent. A person under 18 by law cannot give consent. Anyone that touches a child knowingly for the purpose of sexual gratification is, in fact, committing a crime if they do so knowingly. That is, they're aware of what it is that they're doing. They are aware that they're touching the breasts, they're aware touching the thighs, the buttocks or the anal areas, the inner thighs, the groin, the genital area. If someone engages in that kind of conduct knowingly and it's a child involved that cannot consent then, of course, you have an endangering the welfare of that child because that sexual conduct would impair or debauch the morals of a child.
There is no need, by the way, to prove that there was an actual impairment of the morals. There is no need to prove there was an actual debauching of the morals. The law provides that such conduct impairs the morals of a child or debauches the morals of a child. That's what the State alleges the purpose was here. The allegation is the defendant wanted to lure the child into the van for some type of sexual contact which, of course, would endanger the morals of the child, would endanger the welfare of the child and, of course, would be a violation of that statute and, of course, that statute is a third degree crime so that would be punishable by more than six months in jail so it qualifies as a crime, the purpose to commit that particular crime.
Had the instruction ended here, it would have provided appropriate guidance to the jury with sufficient specificity, based upon the evidence. See State v. Petties, 139 N.J. 310, 319-21, 654 A.2d 979 (1995); State v. Jenkins, 234 N.J.Super. 311, 315-16, 560 A.2d 1240 (App.Div.1989). Even at this point the charge should have contained an admonition that the jurors should not consider their own notions of criminal purpose, but must confine their consideration to the criminal purpose alleged by the State. Petties, supra, 139 N.J. at 320, 654 A.2d 979; Jenkins, supra, 234 N.J.Super. at 316, 560 A.2d 1240.
At the conclusion of the judge's charge, however, at side bar, the prosecutor requested a more expansive charge on this element, and the judge obliged:

*994 One other thing. I talked to you about endangering the welfare of a child as being the State's theory; that I surmised was the State's theory. Obviously I cannot and I should not limit your discretion in any way. If you find there was another purpose which was a criminal purpose and you find that the evidence is there to support that conclusion, you're free to do that by the way. I don't have the power to limit your power. Your power is absolute. But obviously anything you decide should be based on the evidence that has been presented to you.
[(emphasis added).]
At the new trial motion, based on this supplemental charge, defense counsel properly argued "my fear is that [the jurors] could have thought that hishis purpose was to commit anything from harassment, which is a [petty] disorderly persons offense, to lewdness, which is a disorderly persons offense. And we have really no reliable way of knowing what they thought he was doing." We note that the prosecutor had argued in summation that "[t]he State is alleging that it could be a number of offenses" and that "the judge will tell you and guide you in that area." She concluded this portion of her argument by stating "that his purpose was not consistent with anything lawful but in fact was consistent with not lawful things, criminal offense."
In opposition to the new trial motion, the prosecutor relied upon State v. Robinson, 289 N.J.Super. 447, 673 A.2d 1372 (App.Div.1996), a burglary case, in which we held that under the circumstances there presented it was not necessary for the court to instruct the jury on a specific offense the defendant intended to commit. The trial judge agreed. We do not.
In Robinson, at approximately 11:30 p.m. a neighbor observed two men go behind an occupied residence, one of them holding an unidentified object. The neighbor called the police, and upon their arrival they detained one of the men, who was standing in front of the house. The second man, later identified as the defendant, was hanging half in and half out of a window in the rear of the house. When the police announced themselves, the defendant jumped from the window and fled, throwing an object to the ground. The police caught the defendant and recovered the object, a screwdriver. The window had pry marks. The two men did not know the occupants of the residence. Id. at 450-51, 673 A.2d 1372. The defense was misidentification, the defendant claiming he was not the person who was seen climbing in the window. Id. at 451, 673 A.2d 1372. Therefore, no innocent purpose for the conduct of the perpetrator was suggested by the evidence. Id. at 455, 673 A.2d 1372. The trial court explained to the jury the element of "purpose to commit an offense:" "[W]hat offense and whether there was an offense is a question for you to determine based on the facts as you have heard them in the testimony in this case." Id. at 452, 673 A.2d 1372.
We concluded that there was "no reasonable basis upon which the jury might have convicted defendant for entering the dwelling with the purpose to engage in lawful activity," and found that "[n]o reasonable jury under these circumstances needed further guidance beyond the judge's definition of an offense as `unlawful conduct.'" Id. at 455, 673 A.2d 1372. We also noted that the term "offense" includes a crime, disorderly or petty disorderly persons offense. N.J.S.A. 2C:1-14k. Ibid. We concluded that, under the particular circumstances of that case, "no reasonable jury would have difficulty concluding `without guidance' whether defendant's *995 purpose was to commit `some unlawful act,' the specific wrongful act being of no consequence where no innocent purpose is suggested by the evidence." Id. at 456, 673 A.2d 1372.
The situation here is materially distinguishable from Robinson in two respects. The evidence did suggest the possibility of an innocent purpose, namely defendant's expressed purpose of giving E.R. a ride to school. Further, the burglary statute allows for a straightforward, easily understood dichotomy between "some unlawful act" and lawful conduct. Such is not the case with the luring statute, since a myriad of unlawful acts lie between criminal and lawful conduct. Guidance from the court is required to enable jurors to correctly navigate these distinctions.
The guidance that was initially provided by the trial court was eviscerated by the supplemental charge, which allowed the jurors unbridled autonomy in determining criminal purpose. The jurors were thus allowed to speculate whether defendant's purpose, which they may have deemed to be wrongful, was not only unlawful, but criminal. Without proper judicial guidance, jurors are not qualified to make such a determination. We therefore reverse defendant's conviction and remand for a new trial.

III
We briefly address one other point raised by defendant which may come up on retrial. In testifying about his questioning of defendant, Tocci was asked whether defendant provided any other information regarding the May 1997 incident, to which he replied:
No. He said he knows nothing about it so I didn't even continue questioning him about that. I just went back. I asked one more question about why he wanted to give the girl a ride home from the school and at that time he just looked at me with a blank stare and he said in clear English I think I want to get a lawyer or something [like] that.
Although not objected to, the last sentence was clearly improper. State v. Moore, 304 N.J.Super. 135, 143-44, 698 A.2d 1259 (App.Div.1997); (citing Wainwright v. Greenfield, 474 U.S. 284, 295, 106 S.Ct. 634, 640, 88 L.Ed.2d 623, 632 (1986)). On retrial no reference shall be made to defendant's invocation of his privilege against self-incrimination or his right to counsel.
In light of our disposition, it is unnecessary to address defendant's remaining arguments.
Reversed.
NOTES
[1] The indictment and verdict sheet refer to the date of this incident as April 14, 1998. However, based on the testimony at the Miranda hearing and at trial, April 13, 1998 is the correct date.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] A motor vehicle is involved in this case. N.J.S.A. 2C:13-6 also proscribes luring into a structure or isolated area.
[4] We are aware that one commentator has stated that a purpose to commit a disorderly or petty disorderly offense is sufficient to establish culpability for luring. 33 New Jersey Practice, Criminal Law § 10.6, at 279 (Gerald D. Miller) (rev. 3rd ed.2001). We reject this proposition. The State does not argue otherwise.