793 A.2d 89 (2002)
349 N.J. Super. 145
STATE of New Jersey, Plaintiff-Respondent,
v.
Manuel PEREZ, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 26, 2002.
Decided March 14, 2002.
*90 Joseph S. Szary, Springfield, argued the cause for appellant, (James H. Maynard & Associates, attorneys; Mr. Szary, on the brief).
Gary H. Schlyen, Patterson, Acting Chief Assistant Prosecutor, argued the cause for respondent, (Boris Moczula, Acting Passaic County Prosecutor, attorney; Mr. Schlyen, of counsel and on the brief).
Before Judges CIANCIA, PARRILLO and COLEMAN.
The opinion of the court was delivered by PARRILLO, J.A.D.
Tried to a jury, defendant Manuel Perez was convicted of third-degree child luring, N.J.S.A. 2C:13-6, and third-degree attempting to endanger the welfare of a child, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:24-4(a), both offenses involving the same two incidents and the same victim. A stalking charge, N.J.S.A. 2C:12-10b, was dismissed by the court on defendant's motion after the State's case. After denial of his motion for a new trial, defendant was sentenced to concurrent three year probationary terms conditioned on serving four days, cumulatively, in the Passaic County jail, payment of mandatory penalties, and lifetime community supervision pursuant to Megan's Law, N.J.S.A. 2C:43-6.4. Defendant appeals. We reverse and vacate defendant's judgment of conviction.
Defendant's convictions arose out of two brief encounters that he had with D.D., a girl then thirteen years of age, one in February 1999 and the second on May 28, 1999. According to the State's proofs, defendant, a thirty-four-year-old married man, and D.D. lived in the same neighborhood, a few blocks from each other. D.D. had resided in this neighborhood for about three or four years. They were not previously acquainted, however, although D.D. would pass by defendant's home on her way to the junior high school, where she was at the time a seventh grader, and occasionally see defendant going in or out *91 of his house. Prior to the February 1999 encounter, they never spoke to each other.
Defendant's first encounter with D.D. was sometime in February 1999 on a rainy morning at about 7:30 a.m. while D.D. was walking alone to school. D.D. did not have an umbrella, raincoat, or other rain gear, and was carrying a backpack. She was about a block from her school when defendant, on his way to the gym, pulled his car alongside of D.D., who was on his driver's side, and asked her if she wanted a ride. D.D. said "no" and continued on her way to school while defendant drove off. When she returned home from school, she mentioned the incident to her parents and was told by her father that she did the right thing in reporting the encounter to them. After the incident, D.D. continued walking the same path to school and, although they may have passed each other on the street, defendant never spoke to her again until their second encounter on May 28, 1999.
On that day, at around 9:00 p.m., D.D. was riding her bicycle in the neighborhood with her two younger brothersK.D., then age nine, and F.D., then age eleven who were rollerblading. They were on their way to visit a friend who lived nearby when, about one block from their home, defendant, alone in his car, pulled up behind them to their right and called out to D.D. to "come over here." D.D. did not respond because she either did not hear or was ignoring defendant, but F.D. asked "what," to which defendant replied "not you, her." D.D. still did not respond but continued riding her bicycle, instructing her brothers to turn around with her and go home. Defendant repeated his request a few more times, inquiring of D.D. whether she remembered him and motioning for her to approach his car, which was stopped at the time. D.D. continued ignoring him and headed home with her brothers while defendant drove off. D.D. never spoke to defendant during this brief encounter.
The children returned home and told their father, who in turn reported the incident to the police. Later that evening, defendant was brought to police headquarters and, under questioning, gave an account of the two encounters nearly identical to D.D.'s version. He volunteered further:
I see this girl all the time, all the time. I've only spoken to her twice during the winter and today. Sometimes on the weekends or after school hours she's with friends, and tonight I saw her on the bicycle. I know she's younger than me, but I didn't know she's a minor. She's cute, she's nice, but her looks are deceiving. I thought she's a teenager, about 16. Also her height, she's a pretty tall girl.
Defendant denied ever "picking up" a girl he knew or believed to be a minor. When specifically asked about his attraction to D.D., defendant responded: "I don't want to give up anything like my marriage, but what impressed me is her looks, she's attractive and her height. I don't know much about her." Defendant specifically recalled seeing D.D. one day on his way to Pathmark:
She was sitting on her front porch and I saw her talking to two young guys. I just drove by and we made eye contact and I just smiled at her. I was surprised that she lived there, I didn't know. I wasn't jealous of them, they were in her age bracket, I guess I'm just trying to take advantage of how I look now while I can. I am obsessed with her, but not like anything out of the ordinary. I find her attractive and there are plenty of young ladies that go by that way and sometimes I get to talk to them. Sometimes girls going to school or joggers. I don't usually fantasize *92 about her but sometimes if it come to me. Mentally I've thought of asking her for a date, but actually no, it's hard to come on to a lady straight. You have to play the game. I wish I could ask her out but physically it is hard.
He explained the May 28, 1999 encounter in this manner:
Yes, I said come over here. She didn't come over, she made a U-turn with the two boys and went up [the] Avenue. I just smiled and continued on my way. I wanted to talk to her because she was across the street, and I wanted to tell her that if she remembers me, and that I was the guy that lives over on the corner of [ ]. I just wanted to see her up close and hear her voice and what she's like.
At the close of the State's proofs, defendant moved to dismiss all three counts of the indictment. The trial judge dismissed only the count of stalking and, with respect to the other two counts, reasoned thus:
The evidence does not indicate that either in February of 1999 or in May of 1999, that the conversation dealt with sex.
In fact D.D. herself testified that there was nothing sexual. The defendant did not do anything that, under the circumstances-did not follow her, did not offer to take her anywhere, did not show her anything; did not ask her any other questions and did not mention he liked her or thought she was pretty or attractive and this would be [applicable] to both February of 1999 and May of 1999.
What moves it in the direction of sex is the statement of the defendant.
....
It's very close in my judgment as to whether or not both Counts 2 and 3 should be dismissed. It's a close question I believe, but as I indicated the standard is that the State does not have to exclude every reasonable hypothesis except that of guilt, and I think when you consider the totality of the circumstances in giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, I think ... a reasonable jury could conclude that the defendant is guilty beyond a reasonable doubt, that is to say, I think the jury can conclude that it was the defendant's conscious object both as to Count 2 and as to Count 3 to engage in a sexual act with this person which would be a prohibited offense or a criminal offense or sexual contact given her age being 13.
....
Now it might be that he just wanted to ask her for a date, but, on the other hand, it might have been that he wanted to get her into the car to commit some type of sexual act with her.
Now, you don't get it from what he said to her, but arguably you get it from the fascination that he had with her in terms of his statement to the police, and I realize it's somewhat of a stretch, but I really think it's a question that the jury should decide.
....
I don't recall having such a close question since I've been here, but I'm going to deny the motion as to Counts 2 and 3.
On appeal, defendant raises several issues, all of which contest the sufficiency of the evidence to support his dual convictions. We have concluded, after reviewing the entire record in light of the arguments advanced on appeal, that there was no reasonable basis upon which the jury might have convicted defendant for child luring and attempted child endangerment. Because an acquittal on the basis of insufficiency *93 of the evidence was warranted, we vacate defendant's judgment of conviction.
The standard to be applied in deciding a motion for judgment of acquittal made under R. 3:18-1 at the close of the State's case is whether or not the evidence, be it direct or circumstantial, viewed in its entirety and giving the State the benefit of all the evidence favorable to it and all favorable inferences which could be reasonably drawn therefrom, is sufficient to enable a jury to find that defendant is guilty as charged beyond a reasonable doubt. If the evidence is insufficient to warrant a conviction, then the motion must be granted. State v. Reyes, 50 N.J. 454, 458-459, 236 A.2d 385 (1967); State v. Rodriguez, 141 N.J.Super. 7, 11, 357 A.2d 59 (App.Div.), certif. denied, 71 N.J. 495, 366 A.2d 651 (1976). We apply the same standard as the trial court in reviewing its denial of a motion for acquittal. State v. Moffa, 42 N.J. 258, 263, 200 A.2d 108 (1964). A reversal on the ground of insufficient evidence requires an acquittal. Hudson v. Louisiana, 450 U.S. 40, 43, 101 S.Ct. 970, 972, 67 L.Ed.2d 30, 33 (1981); Burks v. United States, 437 U.S. 1, 16, 98 S.Ct. 2141, 2149-50, 57 L.Ed.2d 1, 12-13 (1978).
Both crimes with which defendant was charged are inchoate in nature, involving conduct designed to culminate in the commission of a substantive offense but that has not yet achieved its completion because something remains to be done by the actor. N.J.S.A. 2C:5:1a. Because situations at this stage are often ambiguous, and equivocal behavior may be misconstrued as preparation to commit a crime, to prevent the danger of abuse, criminal attempt is limited to an offense of criminal purpose implemented by an overt act strongly corroborative of such purpose. State v. Farrad, 164 N.J. 247, 257-58, 753 A.2d 648 (2000). Thus, an attempt must be purposive; no lesser mental state will suffice. State v. Robinson, 136 N.J. 476, 485, 643 A.2d 591 (1994); State v. Crescenzi, 224 N.J.Super. 142, 147, 539 A.2d 1250 (App.Div.), certif. denied, 111 N.J. 597, 546 A.2d 520 (1988). And the purpose must be to cause a particular result. See State in Interest of J.L.W., 236 N.J.Super. 336, 341 n. 3, 565 A.2d 1106 (App.Div.1989). This element of purposive conduct requires an exploration of the actor's intent, not merely the possible consequences of his action. See State v. Battle, 209 N.J.Super. 255, 258-59, 507 A.2d 297 (App.Div.), certif. denied, 105 N.J. 560, 523 A.2d 194 (1986). The "purpose" requirement is interrelated with the general rule that there must be substantial steps strongly corroborative of the firmness of defendant's purpose to carry out the crime. See State v. Fornino, 223 N.J.Super. 531, 538, 539 A.2d 301 (App.Div.), certif. denied, 111 N.J. 570, 546 A.2d 499, cert. denied, 488 U.S. 859, 109 S.Ct. 152, 102 L.Ed.2d 123 (1988). The requirement that the actor's conduct shall strongly corroborate his purpose to commit a crime is intended to assure that it demonstrates that he is being guided by a criminal purpose. See Cannel, Criminal Code Annotated, comment 6 on N.J.S. 2C:5-1b (2000).
Thus, N.J.S.A. 2C:13-6 provides in pertinent part:
A person commits a crime of the third degree if he attempts to lure or entice a child into a motor vehicle ... with a purpose to commit a criminal offense with or against the child. "Child" as used in this act means a person less than 18 years old.
The elements of this offense are (1) that the defendant attempted to lure or entice into a motor vehicle; (2) a child under eighteen years-old; and (3) the defendant had a purpose to commit a criminal offense with or against the child. State v. Olivera, *94 344 N.J.Super. 583, 589, 782 A.2d 988 (App.Div.2001). The Legislature has chosen to condition a defendant's culpability for luring on a purpose to commit a "criminal offense," a term equated with "crime," defined as "[a]n offense ... for which a sentence of imprisonment in excess of 6 months is authorized." N.J.S.A. 2C:1-4a. See State v. Olivera, supra, 344 N.J.Super. at 589, 782 A.2d 988.
The other crime that defendant was charged with attempting to commit, child endangerment, is defined thus:
Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child, or who causes the child harm that would make the child an abused or neglected child as defined in R.S.9:6-1, R.S.9:6-3 and P.L. 1974, c. 119, s. 1 (C.9:6-8.21) is guilty of a crime of the second degree. Any other person who engages in conduct or who causes harm as described in this subsection to a child under the age of 16 is guilty of a crime of the third degree.

[N.J.S.A. 2C:24-4a (emphasis added).]
This offense prohibits impairing or debauching the morals of a child by sexual conduct. Although the term "sexual conduct" is not defined, clearly included are sexual assault and sexual contact as those terms are used in Chapter 14. See State v. D.R., 109 N.J. 348, 537 A.2d 667 (1988); State v. Miller, 108 N.J. 112, 527 A.2d 1362 (1987); State v. Hess, 198 N.J.Super. 322, 486 A.2d 1301 (App.Div.1984); State v. Davis, 229 N.J.Super. 66, 550 A.2d 1241 (App.Div.1988).
Both crimes, N.J.S.A. 2C:13-6 and N.J.S.A. 2C:24-4a, focus on the actor's intent. Indeed, a critical issue in this case pertains to the purpose with which defendant acted on the two occasions he encountered D.D. Again we stress that a purpose to commit a crime is required under both statutory provisionsand in the case of N.J.S.A. 2C:44-4a, a crime of a sexual naturebecause "much that is inappropriate, unseemly, reprehensible, or even unlawful, falls below that threshold." State v. Olivera, supra, 344 N.J.Super. at 590, 782 A.2d 988. And it is not just any notion of criminal purpose that will suffice, but rather the criminal purpose alleged by the State. Id. at 592, 782 A.2d 988. See also State v. Petties, 139 N.J. 310, 319-21, 654 A.2d 979 (1995); State v. Jenkins, 234 N.J.Super. 311, 315-16, 560 A.2d 1240 (App.Div.1989).
In this case, the allegation is that defendant wanted to lure D.D. into his car for some type of sexual contact, which, of course, would endanger the morals and welfare of the child. To establish this purpose, the State introduced into evidence a statement defendant gave to police on the evening of the May 28, 1999 incident suggesting, at most, his physical attraction to D.D., but acknowledging a disinclination to act on it. Aside from the two underlying encounters themselves, this singular statement of defendant was the only evidence of intent offered by the State. However, being physically attracted to D.D. does not prove that defendant intended to commit a crime, much less a crime of a sexual nature with or against D.D. See State v. Covell, 157 N.J. 554, 566, 725 A.2d 675 (1999). And given the neutral circumstances attending the two encounters, we conclude that defendant's statement does not make it more likely that his purpose in approaching D.D. on both occasions was to commit a sexual crime with or against her.
This situation is clearly distinct from that in State v. Covell, where the defendant's sixteen-month-old highly incriminating *95 statementadmitting to a problem "with young girls that I can't help"was used in conjunction with an alleged prior incident of lewdness involving another young girl in a grocery store to prove that his present conduct in motioning at and calling for an eight-year-old girl to enter his car before anyone saw her was designed to cause or culminate in the commission of a crime against her. Considering the fact that, in the prior incident, the defendant was observed lowering two plastic plums to the level of his groin area and having an erection while talking to a young girl, the Court concluded that his statement "does make it more likely that defendant's purpose in beckoning to [the minor] was to commit a sexual crime with or against her." Id. at 566-67, 725 A.2d 675. Here, in contrast, defendant's statement is the State's only evidence to prove his intent or motive and its content, which is at most ambiguous and lacking in specificity, certainty and firmness of resolve, is simply not probative of a criminal purpose in beckoning D.D. on either or both occasions.
Even if defendant's statement were considered evidential of a criminal purpose, the State's proofs fail to satisfy the other interrelated requirement of attempt liability, namely that of an overt act strongly corroborative of such purpose. As noted, a criminal attempt requires that the actor take a "substantial step" toward commission of a crime. N.J.S.A. 2C:5-1a(3). For an act to be considered a substantial step, it must be strongly corroborative of the firmness of the actor's purpose to carry out the crime. N.J.S.A. 2C:5-1(b); State v. Fornino, supra, 223 N.J.Super. at 538, 539 A.2d 301.
Neither of defendant's two encounters with D.D., even when viewed together, qualifies. In the first incident, in February 1999, defendant merely offered D.D. a short ride to school while it was raining and the minor was without any rain gear. Three months later, on May 28, 1999, without any interaction in the meantime, defendant motioned for D.D. to come over to his car to talk while she was riding her bicycle, accompanied by her two brothers, and close to home. Absent from these approaches was any sexual innuendo, overtone, or content. On both occasions, defendant took no further action than the initial request, and left the scene immediately upon D.D.'s rejection. He neither issued a command, opened the car door, nor engaged her in further conversation. In fact, on the second occasion he did not even request that D.D. enter the car. Nor did he employ any enticement in either instance. There was no lying in wait, searching, or following. Indeed, the trial judge properly granted defendant's motion for judgment of acquittal at the end of the State's case on the stalking charge.
This conduct is even more neutral and innocuous than the accused's behavior in State v. Olivera, supra, during the first of two alleged child luring incidents that was dismissed on the defense's motion for judgment of acquittal at the close of the State's proofs in that case. In Olivera, thirteen-year-old E.T. was walking alone to her seventh grade class when a van driven by the defendant slowed down as it passed her, then pulled up beside her again. The defendant, who was in his late thirties, began a conversation with E.T., eventually inviting her to examine some sports equipment in the back of his van. E.T., who was within one block of her school at this point, walked away. The defendant, who had never exited the van, left the scene. 344 N.J.Super. at 586-87, 782 A.2d 988.
The second incident in Olivera, involving another thirteen-year-old girl almost one year later, and for which the same defendant *96 was convicted, evidenced conduct far more substantial and incriminating than that involved here. Id. at 587, 782 A.2d 988. E.R. was walking alone to her seventh grade class on a day when the weather was clear and dry. She was about one block from school when a detective, coincidentally in the area, spotted the defendant pull his van over in the roadway and, with his head speaking out the window, engage E.R. in conversation. The defendant asked her if she went to the school, where he said that his son also had gone. He then asked if she spoke Spanish. She said she did, and he began speaking to her in Spanish. The defendant then asked her if she needed a ride to school, opened his passenger door, and motioned for her to enter. E.R. declined the invitation, saying "the school's right there," and the van drove off. The detective then approached E.R., found out what happened, and pursued the van. When questioned about his conversation with E.R., the defendant explained that he knew the girl's father. The following day, after learning of the earlier reported incident with E.T., the detective arrested the defendant on an outstanding motor vehicle warrant at which time the defendant admitted lying to the officer the day before and also denied any knowledge of the prior incident with E.T. Id. at 588, 782 A.2d 988.
In contrast, we find that none of defendant's acts here, viewed alone or in the aggregate, may be considered "substantial," and therefore their commission could not be a criminal attempt. Although defendant's statement to the police may betray an intent to act "inappropriately, unseemly or reprehensibly" towards D.D., to further infer a criminal purpose from what at best may be characterized as the early stages of this potential conduct would be too remote, tenuous, and speculative a proposition. In other words, whether the attempt statute serves to criminalize defendant's conduct in this case is not a question simply of degree. Rather, it involves, as a threshold matter, an inquiry into whether these acts demonstrate that defendant is being guided by a criminal purpose so as to satisfy the "substantial step" requirement of N.J.S.A. 2C:5-1a(3). For reasons stated, we conclude they do not and find the trial judge erred when he held that a reasonable jury could find otherwise.
Defendant's judgment of conviction is vacated.