NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2708-14T3

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

HEIDY V. VALDEZ,

 Defendant-Appellant.
___________________________

 Argued September 21, 2016 – Decided August 4, 2017

 Before Judges Fuentes, Simonelli and Carroll.

 On appeal from the Superior Court of New
 Jersey, Law Division, Middlesex County,
 Indictment No. 12-09-1328.

 Alyssa A. Aiello, Assistant Deputy Public
 Defender, argued the cause for appellant
 (Joseph E. Krakora, Public Defender, attorney;
 Ms. Aiello, of counsel and on the briefs).

 Nancy A. Hulett, Assistant Prosecutor, argued
 the cause for respondent (Andrew C. Carey,
 Middlesex County Prosecutor, attorney; Ms.
 Hulett, of counsel and on the brief).
PER CURIAM

 Following a jury trial, defendant Heidy V. Valdez and co-

defendant Juan Del Rosario were convicted of second-degree

aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count one); third-

degree endangering an injured victim, N.J.S.A. 2C:12-1.2(a) (count

two); fourth-degree unlawful possession of a weapon, N.J.S.A.

2C:39-5(d) (count three); fourth-degree possession of a weapon for

an unlawful purpose, N.J.S.A. 2C:39-4(d) (count four); and fourth-

degree obstructing administration of law, N.J.S.A. 2C:29-1(b)

(count five). The charges against defendant stemmed from his

striking a security guard in the head with a baseball bat during

a brawl in a nightclub parking lot, causing her serious bodily

injury, and fleeing from the scene. Del Rosario was prosecuted

and convicted as an accomplice.

 On appeal, defendant raises the following contentions:

 POINT I

 IN ANSWERING THE JURY'S QUESTION REGARDING
 TRANSFERRED INTENT, THE TRIAL COURT FAILED TO
 EXPLAIN THAT THE DOCTRINE COULD NOT BE USED
 TO FIND [DEFENDANT] GUILTY OF SECOND-DEGREE
 AGGRAVATED ASSAULT BY ATTEMPTING TO CAUSE
 SERIOUS BODILY INJURY. (Not Raised Below).

 POINT II

 THE JURY SHOULD NOT HAVE BEEN PERMITTED TO
 CONSIDER WHETHER [DEFENDANT] WAS GUILTY OF
 SECOND-DEGREE AGGRAVATED ASSAULT BY CAUSING
 SERIOUS BODILY INJURY BECAUSE THE STATE FAILED

 2 A-2708-14T3
 TO PRESENT EVIDENCE SUFFICIENT TO WARRANT A
 CONVICTION FOR THAT OFFENSE.

 POINT III

 THE TRIAL [COURT] ERRED IN DENYING
 [DEFENDANT'S] MOTION FOR A JUDGMENT OF
 ACQUITTAL ON THE CHARGE OF ENDANGERING AN
 INJURED VICTIM.

We reject these contentions, and affirm.

 I.

 We derive the following facts from the record. On the evening

of July 28, 2012, M.B.1 was working as a security guard at a

nightclub located on Route 35 in South Amboy. That evening,

defendant and Del Rosario went to the nightclub with two or three

women.

 The club had to be cleared by 2:00 a.m. At approximately

1:30 a.m., M.B. was stationed outside the club by the front doors,

escorting patrons out of the nightclub. The front doors of the

nightclub led to the parking lot. At approximately 1:40 a.m., two

women began fighting on the stairs by the front doors. The fight

continued into the parking lot and became a "giant brawl" involving

numerous individuals. M.B. saw people in the parking lot jumping

on and kicking another security guard, W.H., and went to his aid.

She attempted to get the crowd to disperse by telling them the

1
 We use initials to identify the victim and witnesses in this
matter in order to protect their privacy.
 3 A-2708-14T3
police were called and they would all be charged with driving

while intoxicated unless they left. The next thing she recalled

was waking up on the ground looking up. She tried to get up, but

people told her to stay down and that she had just been hit with

a bat. An ambulance eventually arrived and transported her to the

hospital.

 W.H. testified that he was in the parking lot when he saw the

hatch of an SUV rise and "a bat come out where two gentlemen were

standing behind." He went behind the men in an attempt to remove

the bat from them. He struggled with them over the bat, and lost

his grip when three or four other men pushed him against the SUV

and threw punches at him. A few seconds later, he heard what

sounded like someone getting hit with a bat and saw the bat on the

ground. He did not actually see M.B. get hit, but saw her lying

on the ground "basically unconscious" with blood all over her

head. He grabbed the bat, threw it over a fence, and ran after

the SUV as the driver, later identified as defendant, was

attempting to exit the parking lot. A police officer who had

arrived at the scene saw W.H. running after the SUV, stopped the

vehicle, and arrested defendant.

 Another security guard, R.G., saw a man in a red shirt, later

identified as defendant, come out of an SUV with a baseball bat

and "smash" the back of M.B.'s head and neck. R.G. saw M.B.

 4 A-2708-14T3
"drop[] like a sack of potatoes[,]" and he thought she was dead.

Defendant looked at R.G. after striking M.B., and ran off. R.G.

ran after defendant, yelling to other security guards to "get the

guy in the red shirt." Defendant took off his red shirt as he ran

through the parking lot. R.G. continued chasing defendant and saw

him run across the highway, jump over a concrete median, continue

across the other side of the highway, and duck behind a parked

SUV. R.G. continued to follow defendant and eventually flagged

down a police officer and told the officer: "That's your guy right

there." Defendant was then arrested.

 Another security guard, J.R., saw defendant go to the back

of an SUV, take out a baseball bat, start swinging, and strike

M.B. in the head. Defendant then dropped the bat, removed his red

shirt as he ran through the parking lot, and continued running.

Defendant ran toward the highway and jumped over the median. J.R.

ran after defendant and saw the police placing him under arrest.

 Officer Dennis McQuade was dispatched to the nightclub. As

he approached the parking lot, he saw a male running across the

highway. When he arrived at the parking lot, a security guard

informed him that the male who struck M.B. ran through the parking

lot and across the highway. McQuade radioed to another officer

who later arrested defendant. McQuade stopped Del Rosario from

exiting the parking lot, and arrested him.

 5 A-2708-14T3
 There was surveillance video of the parking lot. The assault

of M.B. was not captured on video, but the video did capture R.G.

chasing defendant through the parking lot as defendant removed his

red shirt. Defendant's red shirt and the bat were later recovered

from the scene.

 II.

 The trial judge instructed the jury on aggravated assault in

accordance with Model Jury Charge (Criminal), Aggravated Assault-

Serious Bodily Injury N.J.S.A. 2C:12-1b(1) (2012), and on

causation and transferred intent when purposeful or knowing

conduct was involved in accordance with Model Jury Charge

(Criminal), Causation and Transferred Intent (N.J.S.A. 2C:2-3)

(2013). During deliberations, the jury asked the following

question: "For the aggravated assault [charge], is the verdict

supposed to reflect intent to hurt [M.B.] or a person in general?"

Without objection, the judge responded to the jury question by

repeating the original causation and transferred intent

instruction.

 In Point I, defendant contends for the first time on appeal

that the judge erred in failing to explain that the doctrine of

transferred intent could not be used to find him guilty of

aggravated assault by attempting to cause M.B. serious bodily

 6 A-2708-14T3
injury because transferred intent cannot be applied to an inchoate

crime. This contention lacks merit.

 "[A]ppropriate and proper [jury] charges are essential [to]

a fair trial." State v. Baum, 224 N.J. 147, 158-59 (2016) (quoting

State v. Reddish, 181 N.J. 553, 613 (2004)). "The trial court

must give a 'comprehensible explanation of the questions that the

jury must determine, including the law of the case applicable to

the facts that the jury may find.'" Id. at 159 (quoting State v.

Green, 86 N.J. 281, 287-88 (1981)). "Thus, the court has an

'independent duty . . . to ensure that the jurors receive accurate

instructions on the law as it pertains to the facts and issues of

each case, irrespective of the particular language suggested by

either party.'" Ibid. (quoting Reddish, supra, 181 N.J. at 613).

"Because proper jury instructions are essential to a fair trial,

erroneous instructions on material points are presumed to possess

the capacity to unfairly prejudice the defendant." Ibid. (quoting

State v. Bunch, 180 N.J. 534, 541-42 (2003)).

 When a defendant fails to object to an error regarding jury

charges, we review for plain error. State v. Funderburg, 225 N.J.

66, 79 (2016). "Under that standard, we disregard any alleged

error 'unless it is of such a nature as to have been clearly

capable of producing an unjust result.'" Ibid. (quoting R. 2:10-

2). "The mere possibility of an unjust result is not enough. To

 7 A-2708-14T3
warrant reversal by this court, an error at trial must be

sufficient to raise "'a reasonable doubt . . . as to whether the

error led the jury to a result it otherwise might not have

reached.'" Ibid. (quoting State v. Jenkins, 178 N.J. 347, 361

(2004)).

 Further, "[w]hen a jury requests a clarification, the trial

judge is obligated to clear the confusion." State v. Conway, 193

N.J. Super. 133, 157 (App. Div.), certif. denied, 97 N.J. 650

(1984). There is no plain error in the judge's responding to a

jury question by repeating the original instructions. State v.

Scher, 278 N.J. Super. 249, 271 (App. Div. 1994).

 There was no error, let alone plain error, here. Even if,

as defendant argues, transferred intent does not apply to an

inchoate crime, there is no inchoate crime to aggravated assault.

"[A]ttempted assault . . . is not defined as an inchoate crime

. . . but as a form of the substantive crime of assault[.]" Cannel,

New Jersey Criminal Code Annotated, comment 3 on N.J.S.A. 2C:5-1

(2017). Thus, a person is found guilty of aggravated assault, not

attempted aggravated assault, if he "[a]ttempts to cause serious

bodily injury to another." N.J.S.A. 2C:12-1(b)(1). Accordingly,

there was no error in the judge responding to the jury question

by repeating the original causation and transferred intent

instruction.

 8 A-2708-14T3
 III.

 Defendant moved for a judgment of acquittal on the aggravated

assault count at the close of the State's case. He argued, as he

does on appeal, the evidence was insufficient to establish that

M.B. suffered serious bodily injury. We disagree.

 At the close of the State's case, the trial judge may enter

"a judgment of acquittal of one or more offenses charged in the

indictment . . . if the evidence is insufficient to warrant a

conviction." R. 3:18-1. In ruling on a motion for a judgment of

acquittal, the judge must determine

 whether, viewing the State's evidence in its
 entirety, be that evidence direct or
 circumstantial, and giving the State the
 benefit of all its favorable testimony as well
 as all of the favorable inferences which
 reasonably could be drawn therefrom, a
 reasonable jury could find guilt of the charge
 beyond a reasonable doubt.

 [State v. Samuels, 189 N.J. 236, 244 (2007)
 (quoting State v. Reyes, 50 N.J. 454, 458-59
 (1967)).]

 Under Rule 3:18-1, the court "is not concerned with the worth,

nature or extent (beyond a scintilla) of the evidence, but only

with its existence, viewed most favorably to the State." State

v. Muniz, 150 N.J. Super. 436, 440 (App. Div. 1977), certif.

denied, 77 N.J. 473 (1978). "If the evidence satisfies that

standard, the motion must be denied." State v. Spivey, 179 N.J.

229, 236 (2004). We use the same standard as the trial judge in
 9 A-2708-14T3
reviewing a motion for judgment of acquittal at the close of the

State's case pursuant to Rule 3:18-1. Bunch, supra, 180 N.J. at

548-49.

 A person is guilty of aggravated assault if he "causes

[serious bodily] injury purposely or knowingly or under

circumstances manifesting extreme indifference to the value of

human life recklessly causes such injury[.]" N.J.S.A. 2C:12-

1(b)(1). Serious bodily injury means "bodily injury which creates

a substantial risk of death or which causes serious, permanent

disfigurement, or protracted loss or impairment of the function

of any bodily member or organ[.]" N.J.S.A. 2C:11-1(b).

 "Where a person causes serious bodily injury, he is guilty

whether his mental state is purposeful, knowing or reckless."

State v. McAllister, 211 N.J. Super. 355, 362 (1986). A person

acts purposely "if he/she acts with design, with a specific intent,

with a particular object or purpose, or if he/she means to do what

he/she does[.]" Model Jury Charge (Criminal), Aggravated Assault-

Serious Bodily Injury N.J.S.A. 2C:12-1b(1). A person acts

knowingly "if he/she is aware that it is practically certain that

his/her conduct will cause such a result." Ibid. A person acts

recklessly

 if he/she consciously disregards a substantial
 and unjustifiable risk that the result will
 occur from his/her conduct. The risk must be
 of such a nature and degree that, considering
 10 A-2708-14T3
 the nature and purpose of the actor’s conduct
 and the circumstances known to the actor, its
 disregard involves a gross deviation from the
 standard of conduct that a reasonable person
 would observe in the actor’s situation. One
 is said to act recklessly if one acts with
 recklessness, with scorn for the consequences,
 heedlessly, fool-hardily.

 [Ibid.]

 Two eyewitnesses saw defendant strike M.B. in the back of her

head with a baseball bat. M.B. was rendered unconscious and

appeared to be dead to one of the witnesses. M.B. testified,

without objection, about the nature and extent of her injuries.

She testified that she sustained a "pretty thick" gash on the back

of her head that required five stiches and left a scar, and intense

bruising all over her body. The jury was shown pictures that

fairly and accurately represented her injuries. She also testified

that she suffered severe back, neck, and head pain; headaches;

ringing in her ears; and severe numbness and tingling down her

arms. She could not remember her name, how to spell words, close

her eyes, stand up without falling, shower on her own, or lay

flat, and she had to sleep sitting up for eight months after the

attack. At the time of trial approximately two years after the

attack, she still had recurring symptoms and suffered from seizures

that caused her to abandon her goal of becoming a law enforcement

officer or continue as an emergency medical technician or volunteer

 11 A-2708-14T3
firefighter. Defendant did not dispute the nature or extent of

M.B.'s injuries.

 Viewing the State's evidence in its entirety, and giving the

State the benefit of all favorable inferences which can be drawn

therefrom, a reasonable jury could find defendant guilty beyond a

reasonable doubt of aggravated assault by causing serious bodily

injury to M.B. The evidence was sufficient for the jury to find

that defendant created a substantial risk of death or a permanent

disfigurement, or protracted loss, or impairment of bodily

function by striking her with great force in the back of her head

with a bat, and that he acted purposely, knowingly, or recklessly

under circumstances manifesting extreme indifference to the value

of human life. M.B.'s injuries were serious, they affected her

daily life and normal activities, and they were protracted,

prolonged and extended in time. Accordingly, the judge properly

denied the motion for judgment of acquittal.

 IV.

 Defendant contends in Point III that because M.B.'s co-

workers came to her aid before he left the scene, the judge erred

in denying his motion for judgment of acquittal at the close of

the State's case on the endangering an injured victim count. This

contention lacks merit.

 N.J.S.A. 2C:12-1.2(a) provides as follows:

 12 A-2708-14T3
 A person is guilty of endangering an
 injured victim if he causes bodily injury to
 any person or solicits, aids, encourages, or
 attempts or agrees to aid another, who causes
 bodily injury to any person, and leaves the
 scene of the injury knowing or reasonably
 believing that the injured person is
 physically helpless, mentally incapacitated
 or otherwise unable to care for himself.

Physically helpless means a "condition in which a person is

unconscious, unable to flee, or physically unable to summon

assistance[.]" N.J.S.A. 2C:12-1.2(b)(1). Mentally incapacitated

means "that condition in which a person is rendered temporarily

or permanently incapable of understanding or controlling one’s

conduct, or of appraising or controlling one’s condition, which

incapacity shall include but is not limited to an inability to

comprehend one’s own peril[.]" N.J.S.A. 2C:12-1.2(b)(2). Bodily

injury "means physical pain, illness or any impairment of physical

condition[.]" N.J.S.A. 2C:11-1(a).

 To satisfy the statute, defendant's flight need not enhance

the risk of further injury. State v. Munafo, 222 N.J. 480, 490

(2015). "The Legislature, instead, chose to criminalize the act

of leaving the scene of an injury with knowledge that the victim

was helpless." Ibid. That behavior, alone, "presents the risk

of further injury." Ibid. Essentially, "[t]he law makes it an

offense to cause bodily injury and flee the scene with knowledge

 13 A-2708-14T3
or a reasonable belief that the injured person was in a vulnerable

state." Id. at 492.

 "It is an affirmative defense to prosecution for a violation

of this [statute] that the defendant summoned medical treatment

for the victim or knew that the medical treatment had been summoned

by another person, and protected the victim from further injury

or harm until emergency assistance personnel arrived." N.J.S.A.

2C:12-1.2(c). The defendant must prove this affirmative defense

by a preponderance of the evidence. Ibid. Defendant does not

argue he was entitled to a judgment of acquittal because he

established this affirmative defense. Nevertheless, he cannot

establish the defense, as he did not know that others had summoned

medical treatment and did not protect M.B. from further injury or

harm until emergency assistance personnel arrived.

 Viewing the State's evidence in its entirety, and giving the

State the benefit of all favorable inferences which can be drawn

therefrom, a reasonable jury could find defendant guilty beyond a

reasonable doubt of endangering an injured victim. Defendant

indisputably caused bodily injury to M.B. and fled the scene. The

jury could reasonably infer from the evidence that defendant knew

or reasonably believed that M.B. was physically helpless or

mentally incapacitated.

 14 A-2708-14T3
 Lastly, we reject defendant's argument that N.J.S.A. 2C:12-

1.2(a) does not apply because M.B.'s co-workers had already come

to her assistance before he fled the scene. The statute does not

require the State to prove that defendant's flight from the scene

increased the risk that further harm would come to M.B. Munafo,

supra, 222 N.J. at 489-90. Leaving the scene of an injury knowing

the victim was helpless is the gravamen of the charge. Ibid.

Defendant fled the scene knowing or reasonably believing that the

victim, whom he struck in the back of her head and knocked

unconscious, was physically helpless, mentally incapacitated, or

otherwise unable to care for herself. Id. at 486.

 Affirmed.

 15 A-2708-14T3